UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INDIAN HARBOR INSURANCE COMPANY,

   Plaintiff,

vs.

THE CITY OF SAN DIEGO,

   Defendant

Case No. 12-cv-5787 (JGK-KNF)
ECF Case

## AMENDED ANSWER AND COUNTERCLAIM AND DEMAND FOR JURY TRIAL FOR DEFENDANT CITY OF SAN DIEGO

Pursuant to Federal Rule of Civil Procedure, Rule 15 (a)(1)(B), Defendant, The City of San Diego ("City"), a charter city, organized and existing under the laws of the State of California, with its principal place of business located in San Diego, California, hereby provides an amended answer to Indian Harbor Insurance Company's ("Indian Harbor") complaint filed July 27, 2012 ("Complaint") in this matter and counterclaims as follows. Any facts and allegations not admitted herein by the City are expressly denied:

## ANSWER

1. The City denies that Indian Harbor has no duty to defend or indemnify the City for claims made against the City related to the following lawsuits: *The Grande North at Santa Fe Place Homeowners Assn. v. Bosa Development California, Inc. et al.*, Case No. 37-2009-00098057, San Diego Superior Court, California; *235 On Market Homeowners Assn. v. 235 Market LLC et al.*, Case No. 37-2011-0097434, San Diego Superior Court, California; and *Element Owners Assn. v. Centex Homes et al.*, Case No. 37-2009-00087185, San Diego Superior Court, California, as set forth in Paragraph 1. (collectively, "Underlying Claims"). Except as stated herein, the City denies each and every allegation of paragraph 1.

2. The City admits the allegations in Paragraph 2.

3. The City admits the allegations in Paragraph 3.

4. The City denies that this Court has personal jurisdiction over this matter, but admits the remainder of the allegations in Paragraph 4.

5. The Jurisdiction and Venue (k) and Choice of Law provisions in the Policy speak for themselves and to the extent Indian Harbor's complaint differs from the terms of the Policy, they are denied. The City denies the remainder of the allegations in Paragraph 5, specifically that this Court is a proper venue for this action.

6. The City admits the allegations in Paragraph 6.

7. The City admits the allegations in Paragraph 7.

8. The City admits the allegations in Paragraph 8.

9. The City admits that the allegations in Paragraph 9 reflect what is stated in Coverage A of the Policy. Except as stated herein, the City denies each and every allegation of paragraph 9.

10. The City admits that the allegations in Paragraph 10 reflect what is stated in the Policy as the definition of LEGAL EXPENSE. Except as stated herein, the City denies each and every allegation of paragraph 10.

11. The City admits that the allegations in Paragraph 11 reflect what is stated in Section VI, "LIMITS OF LIABILITY AND SELF-INSURED RETENTION" of the Policy. Except as stated herein, the City denies each and every allegation of paragraph 11.

12. The City admits that the allegations in Paragraph 12 reflect what is stated in Section VII, "REPORTING, DEFENSE, SETTLEMENT AND COOPERATION" of the Policy. Except as stated herein, the City denies each and every allegation of paragraph 12.

13. The City admits that the allegations in Paragraph 13 reflect what is stated in Section IX, "CONDITIONS" of the Policy. Except as stated herein, the City denies each and every allegation of paragraph 13.

14. The City admits that Grande North alleges that failures of and defects in, among other things, the plumbing and 36 inch main sewer line, have allowed the introduction of hydrogen sulfide gases into the condominium building. Except as stated herein, the City denies each and every allegation of paragraph 14.

15. The City admits that on August 13, 2009, it received a government claim from claimant, The Grande North at Santa Fe Place Homeowners Association. The City admits that it denied the claim on August 24, 2009. Except as stated herein, the City denies each and every allegation of paragraph 15.

16. The City admits that on September 10, 2009, The Grande North at Santa Fe Place Homeowners Association filed suit against Bosa Development California, Inc. and the City, entitled *The Grande North at Santa Fe Place Homeowners Association v. Bosa Development California, Inc. et al.*, San Diego County Superior Court Case No. 37-2009-00098057-CU-CD-CTL. As against the City, the complaint alleges cause of action for Inverse Condemnation, Dangerous Condition, Public Nuisance, Private Nuisance, Trespass, Trespass-Extrahazardous Activities, and Injunctive Relief. The City admits that the lawsuit seeks costs for correction of the alleged problems, damages for diminution in value, relocation costs, certain repairs, and installation of an odorless connection so as to prevent hydrogen sulfide gases from entering the property. Except as stated herein, the City denies each and every allegation of paragraph 16.

17. The City admits that the City Attorney's office is defending the *Grande North* lawsuit. Except as stated herein, the City denies each and every allegation of paragraph 17.

18. The City admits that it provided notice of the *Grande North* lawsuit to Indian Harbor on March 23, 2012. Except as stated herein, the City denies each and every allegation of paragraph 18.

19. The City admits the allegations in Paragraph 19.

20. The City admits that on July 27, 2012, Indian Harbor disclaimed coverage for the Grande North Claim, citing late notice of the claim. The City admits that Indian

3

Harbor reserved the right to disclaim coverage based on other Policy provisions. Except as stated herein, the City denies each and every allegation of paragraph 20.

21.   The City admits that on May 19, 2011, it received a government claim from claimant, 235 On Market Homeowners Association. The City admits that the government claim alleged that there was a significant odor and corrosion problem in the building waste and vent system. The government claim also alleged that the odor and corrosion were directly attributed to sewer gasses containing hydrogen sulfide (among other things) which originated in the City sewer main. The City admits that it denied the 235 On Market Homeowners Association government claim on June 23, 2011. The City admits that on September 2, 2011, 235 On Market Homeowners Association filed a suit captioned *235 On Market Homeowners Association v. 235 Market LLC, et al*, San Diego County Superior Court Case No. 37-2011-00097434-CU-CD-CTL, against 235 Market LLC and the City. Except as stated herein, the City denies each and every allegation of paragraph 21.

22.   The City admits that the City Attorney's office is defending the *235 On Market* lawsuit. Except as stated herein, the City denies each and every allegation of paragraph 22.

23.   The City admits that it provided notice of the *235 On Market* lawsuit to Indian Harbor on May 25, 2012. Except as stated herein, the City denies each and every allegation of paragraph 23.

24.   The City admits that on June 7, 2012, Indian Harbor sent a letter to the City, acknowledging receipt of notice of the 235 On Market lawsuit, and advised the City that Indian Harbor reserved its rights on a variety of bases and requested information. Except as stated herein, the City denies each and every allegation of paragraph 24.

25. The City admits that on July 27, 2012, Indian Harbor disclaimed coverage for the 235 On Market Claim, citing late notice of claim. The City admits that Indian Harbor reserved the right to disclaim coverage based on other Policy provisions. Except as stated herein, the City denies each and every allegation of paragraph 25.

26. The City admits the allegations in Paragraph 26.

27. The City admits the allegations in Paragraph 27.

28. The City admits that the City Attorney's office defended the *Centex* lawsuit. Except as stated herein, the City denies each and every allegation of paragraph 28.

29. The City admits that it provided notice of the *Centex* lawsuit to Indian Harbor on May 25, 2012. Except as stated herein, the City denies each and every allegation of paragraph 29.

30. The City admits that on June 7, 2012, Indian Harbor sent a letter to the City, acknowledging receipt of notice of the *Centex* lawsuit, and advised the City that Indian Harbor reserved its rights on a variety of bases, and requested information. Except as stated herein, the City denies each and every allegation of paragraph 30.

31. The City admits that on July 27, 2012, Indian Harbor disclaimed coverage for the *Centex* claim, citing late notice of claim. The City admits that Indian Harbor reserved the right to disclaim coverage based on other Policy provisions. Except as stated herein, the City denies each and every allegation of paragraph 31.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

#### (Estoppel)

32. Indian Harbor's claims are barred, in whole or in part, because it is estopped from enforcing application of the notice provisions in the Policy because

5

application of the provisions constitutes an arbitrary and unfair violation of California public policy.

## SECOND AFFIRMATIVE DEFENSE

### (Waiver)

33. Indian Harbor's claims are barred, in whole or in part, because it has waived application of the notice provisions in the Indian Harbor Policy by denying coverage despite lack of demonstrated prejudice, in violation of applicable law and public policy.

## THIRD AFFIRMATIVE DEFENSE

### (Lack of Prejudice)

34. Indian Harbor's claims are barred, in whole or in part, because to the extent notice of the Underlying Claims was not given to Indian Harbor in compliance with the notice provisions in the Indian Harbor Policy, Indian Harbor cannot show that it was prejudiced thereby and Indian Harbor must not be permitted to disclaim coverage for the Underlying Claims based thereon.

## FOURTH AFFIRMATIVE DEFENSE

### (Disproportionate Forfeiture)

35. Indian Harbor's claims are barred, in whole or in part, because the City's compliance with the notice provision in the Policy should be excused under New York Law to avoid the City's disproportionate loss of Policy benefits.

## FIFTH AFFIRMATIVE DEFENSE

### (Application of California Law)

36. Indian Harbor's claims are barred, in whole or in part, because Application of New York law would violate an important public policy of the State of California, which

6

governs the City, a chartered municipal corporation of the State of California. California has a strong public policy against technical forfeitures, particularly in insurance contracts. California has applied that public policy in support of applying the notice-prejudice rule and California law has the most significant relationship to this matter.

## SIXTH AFFIRMATIVE DEFENSE

### (Improper/Inconvenient Venue and/or Forum Nonconveniens)

37. Indian Harbor's claims are barred, in whole or in part, because Indian Harbor is a North Dakota corporation and the Underlying Claims are being adjudicated in California. No parties to this lawsuit are citizens of or reside in New York. Indian Harbor initiated this litigation in New York for the sole purpose of avoiding adjudication of the matter in the State of California. The Court should dismiss this matter or hold it in abeyance to permit the issues involved to be litigated to resolution in California, or transfer this case to the District Court for the Southern District of California.

## SEVENTH AFFIRMATIVE DEFENSE

### (Barred By Counterclaim)

38. Indian Harbor's complaint is barred by matters alleged in the accompanying counterclaim.

## EIGHTH AFFIRMATIVE DEFENSE

### (Bad Faith)

39. Indian Harbor's claims are barred by its breach of the duty of good faith and fair dealing.

## NINTH AFFIRMATIVE DEFENSE

### (Additional Defenses)

40. The City may have additional defenses that cannot be articulated at this

7

time due to the generality of Indian Harbor's pleading and because discovery is incomplete. Accordingly, the City expressly reserves the right to supplement the foregoing and plead any and all additional defenses available under law.

## CITY OF SAN DIEGO'S COUNTERCLAIM

The City of San Diego ("City" or "Counterclaimant") brings these counterclaims against Indian Harbor Insurance Company ("Indian Harbor").

## THE PARTIES

41. The City is now and at all times mentioned herein was, a charter city, organized and existing under the laws of the State of California.

42. The City is informed and believes and thereon alleges that Indian Harbor is, and at all relevant times has been, a corporation organized and existing under the laws of the state of North Dakota, with its principal place of business located in Stamford, Connecticut.

## NATURE OF THE ACTION

43. This Counterclaim seeks adjudication of Indian Harbor's duties owed to the City for the defense and indemnity of the *Grande North, 235 On Market,* and *Centex* actions, and for the recovery of benefits under the Policy of insurance issued by Indian Harbor to or for the benefit of the City, and the recovery of the attorney's fees incurred by the City as a result of Indian Harbor's breach of contract.

## GENERAL ALLEGATIONS

**A. Indian Harbor Insured the City, Promising a Defense Against Pollution Condition Claims**

44. Indian Harbor issued a "Pollution and Remediation Legal Liability Policy" to

8

imanage-175423.1

the California State Association of Counties ("CSAC") CSAC-2, designated as Policy No. PEC002076401, for the policy period from July 1, 2009 to July 1, 2012 (the "Policy"). The Policy carried a liability limit of $10 million per pollution condition, with an aggregate limit of $50 million. The City is an additional named insured under the Policy.

45. Under the terms of the Policy, Indian Harbor agreed to "pay on behalf of [City] for LOSS and related LEGAL EXPENSE resulting from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION, which the [City] has or will become legally obligated to pay as a result of a CLAIM first made against [City] during the POLICY PERIOD and reported to [Indian Harbor], in writing, by [City], during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD.

46. A LOSS under the policy means "monetary judgment, award or settlement of compensatory damages as well as related punitive, exemplary, or multiplied damages where insurance coverage is allowable by law arising from: . . . 2. PROPERTY DAMAGE."

47. PROPERTY DAMAGE includes "(1) physical injury to or destruction of tangible property, including the resulting loss of use thereof, and including the personal property of third parties; (2) loss of use of such property that has not been physically injured or destroyed; (3) diminished third party property value; and/or (4) NATURAL RESOURCE DAMAGE, caused by any POLLUTION CONDITION."

48. A POLLUTION CONDITION is defined, in part, as "the discharge, dispersal, release, seepage, migration, or escape of POLLUTANTS into or upon land, or structures thereupon, the atmosphere, or any watercourse or body of water including groundwater[.]"

49. POLLUTANTS are defined to include "any solid, liquid, gaseous, or thermal pollutant, irritant or contaminant including but not limited to smoke, vapors, odors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, waste materials, including medical, infections and pathological wastes, electromagnetic fields, LOW-LEVEL RADIOACTIVE WASTE AND MATERIAL, and MOLD MATTER."

50. LEGAL EXPENSE means "legal costs, charges and expenses incurred in the investigation, adjustment or defense of any CLAIM for LOSS. . . and shall include any necessary expert fees paid to experts retained by defense counsel [, but does not include] the time and expense incurred by [City] in assisting in the investigation or resolution of a CLAIM . . . including but not limited to the costs of the [City's] in-house counsel, salary charges of regular employees or officials of the [City], and fees and expenses of supervisory counsel retained by the [City]."

51. In addition to its promise to pay City for LOSS and LEGAL EXPENSE, Indian Harbor also promised "to defend [City] against any CLAIM seeking damages for a LOSS."

**B. The City is Named as a Defendant and Cross-Defendant in Two Underlying Lawsuits and Presented With an Administrative Claim in a Third Matter, all Alleging Property Damage Caused by Gases Emanating From the City's Sewer Main.**

52. On September 10, 2009, The Grande North at Santa Fe Place Homeowners Association (the "Grande North HOA") filed a lawsuit in the San Diego County Superior Court captioned *The Grande North at Santa Fe Place Homeowners Association v. Bosa Development California, Inc. et al.* ("Grande North Action"). The complaint named the City as a defendant. The complaint alleges, *inter alia*, that the City owns, maintains and controls a 36" diameter main sewer line beneath Pacific Coast Highway, and that as a result of the faulty planning, design and maintenance of the City's

10

main sewer line, the Grande North at Santa Fe condominium project has been repeatedly damaged and is continuing to be damaged by the introduction of hydrogen sulfide gases from the City's 36" main sewer line into the condominium project, which has caused and continues to cause corrosion of the project's plumbing system and sewage backups. The complaint alleges causes of action against the City for inverse condemnation, dangerous condition, public nuisance, private nuisance, and trespass. The Grande North HOA seeks damages from the City for, among other things, the costs of correction of the problems, including redesign and reconstruction of portions of the project, and relocation costs when repairs are effectuated. A Second Amended Class Action Complaint was filed by the Grande North HOA on or about December 23, 2011, alleging the same causes of action against the City. In addition, cross-complaints have been filed against the City in the *Grande North Action* by Bosa Development California, Inc., Catellus Operating Limited Partnership and Catellus Urban Development Corporation, and William Kelly & Sons California, Inc., seeking, *inter alia,* indemnity, apportionment, contribution and/or other relief as against the City with respect to injuries and damages allegedly sustained by the Grande North HOA and/or cross-complainants in the *Grande North Action*.

53. On September 2, 2011, the 235 On Market Homeowners Association (the "235 On Market HOA") filed a lawsuit in the San Diego County Superior Court, captioned *235 On Market Homeowners Association v. 235 Market L.L.C., et al.* ("*235 On Market Action*"). The complaint named the City as a defendant. The complaint alleged, *inter alia*, that the City owns, maintains, and controls a main sewer line adjacent to the 235 On Market condominium project, and that as a result of the faulty planning, design and maintenance of the City's main sewer line, the condominium project has been repeatedly

11

damaged and is continuing to be damaged by introduction of hydrogen sulfide gases from the City's main sewer line into the condominium project, which has caused and continues to cause corrosion of the project's plumbing system and sewage backups. The complaint alleges causes of action against the City for inverse condemnation and dangerous condition. The 235 On Market HOA seeks damages from the City for, among other things, the costs of correction of the problems, including redesign and reconstruction of portions of the project, and relocation costs when repairs are effectuated. In addition, cross-complaints have been filed against the City in the *235 On Market* action by 235 Market II LLC and Collins Plumbing, Inc., seeking, *inter alia*, indemnity, apportionment, contribution and/or other relief against the City with respect to injuries and damages allegedly sustained by the plaintiff and/or cross-complainants in the *235 On Market* action, including attorney's fees and costs incurred in defense of the complaint and/or cross-complaints.

54. On or about March 28, 2012, Centex Homes, Centex Real Estate Corporation, Centex Construction Company, Inc., and Belfour Beatty Construction Company, Inc. (collectively, "Centex") submitted a governmental "Claim Against the City of San Diego" to the City, seeking equitable indemnity with respect to claims made against them by Element Owners Association arising out of alleged gas emissions emanating from the City's sewer system ("*Centex Claim*").

### C. Indian Harbor Breached its Duty to Defend and Indemnify the City in the *Grande North* and *235 On Market* Actions and the *Centex* Claim.

55. During the reporting period in the Policy, the City gave notice of and reported the *Grande North* Action and the *235 On Market* Action, including the various cross-complaints filed against the City therein, and the *Centex Claim*, to Indian Harbor.

12

56. By three letters dated July 27, 2012, Indian Harbor wrongfully disclaimed and denied coverage for the *235 On Market Action*, and the *Centex Claim*, because notice of the claims was allegedly given to Indian Harbor late, in violation of the Policy's notice provision.

57. As a result of Indian Harbor's wrongful denial of a defense and withholding of contractual benefits under the Policy, the City has been forced to incur costs to defend the *Grande North* Action and the *235 On Market* Action, including the cross-complaints filed against the City therein, and the *Centex Claim*.

58. On October 25 and November 1, 2012, the City gave notice to Indian Harbor of a mediation in the *Grande North* Action, which was scheduled for December 5, 2012. On November 26, 2012 Indian Harbor, through its counsel, declined to participate in the *Grande North* Action, citing its coverage denial as the basis for its refusal.

## COUNTERCLAIM 1

### Declaratory Judgment

59. The City incorporates and re-alleges Paragraphs 41 through 58 as though fully set forth herein.

60. The City is informed and believes and thereon alleges that Indian Harbor contends it is not obligated to defend or indemnify the City against the *Grande North* Action, *235 On Market* Action, or the *Centex Claim*, including any and all cross-complaints asserted against the City therein (collectively, "Underlying Claims") based on the alleged failure of the City to provide notice of the claims as soon as practicable. The City contends that Indian Harbor is obligated to defend and indemnify it in each of the Underlying Claims.

13

61. An actual controversy has, therefore, arisen and currently exists between the City, on the one hand, and Indian Harbor on the other, regarding whether or not Indian Harbor has a duty to defend and indemnify the City against the Underlying Claims. Consequently, a judicial determination of such controversies is necessary and appropriate at this time.

62. The City seeks a declaration from the Court that Indian Harbor has a duty to defend and indemnify it against the Underlying Claims.

## COUNTERCLAIM 2

### Breach of Contract

63. The City incorporates and re-alleges Paragraphs 41 through 62 as though fully set forth herein.

64. The City performed the conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Policy.

65. Indian Harbor breached the terms of its Policy by wrongfully denying insurance benefits to the City, which are now due and payable in amounts reasonably incurred by the City in the defense of the Underlying Claims.

66. As a direct and proximate result of Indian Harbor's breach, the City has been damaged in an amount to be proven at trial, which includes all of the reasonable and necessary fees and costs of defending against the Underlying Claims, in a total amount to be proven at trial.

67. The City is informed and believes and thereon alleges that Indian Harbor's denial was vexatious and without reasonable cause. The City is entitled to reasonable attorneys' fees incurred in prosecuting this action, in an amount to be proven at trial.

## COUNTERCLAIM 3

### Breach of the Implied Covenant of Good Faith and Fair Dealing

68. The City incorporates and re-alleges Paragraphs 41 through 67 as though fully set forth herein.

69. A relationship of trust and confidence was established between Indian Harbor, on the one hand, and the City on the other hand, by virtue of the City's status as an insured under Indian Harbor's Policy. Indian Harbor owed the City a duty to deal fairly and in good faith in all matters between them.

70. The City is informed and believes and thereon alleges that Indian Harbor breached its duty of good faith and fair dealing by, among other things, unreasonably denying coverage based on alleged late notice, despite the lack of any demonstrated prejudice to Indian Harbor, in violation of applicable law and public policy.

71. As a direct and proximate result of the above-mentioned breaches of the duty of good faith and fair dealing, the City has been damaged in an amount to be proven at trial.

72. The City is informed and believes and thereon alleges that Indian Harbor has deliberately denied insurance benefits to the City, despite knowing facts which established that the City was clearly and unambiguously entitled to such benefits. Indian Harbor made a calculated and deliberate decision to act in this manner. Indian Harbor has intentionally withheld benefits despite knowledge of its contractual and statutory obligations, and has acted with an intent to enrich itself while injuring and harming the City.

### CITY'S RESPONSE TO INDIAN HARBOR'S FIRST COUNT

73. The City denies the allegations in Paragraph 32.

15

imanage-175423.1

74. The City denies the allegations in Paragraph 33.

75. The City denies the allegations in Paragraph 34.

76. The City denies the allegations in Paragraph 35.

77. The City denies the allegations in Paragraph 36.

**WHEREFORE**, Counterclaimants demand judgment against Indian Harbor as set forth below:

1. On the First Counterclaim, a declaration by this Court in favor of the City, that Indian Harbor owes a duty to defend and indemnify the City in each of the Underlying Claims.

2. On the Second and Third Counterclaim, for all damages sustained as a result of the breaches of contract alleged herein, according to proof.

3. On the Third Counterclaim, for attorney's fees including those incurred in prosecuting this action.

4. On all Counterclaims, for prejudgment interest, costs and expenses of suit, and such other and further relief as the Court deems just and proper.

5. That Indian Harbor take nothing by way of its Complaint herein.

6. That the City be awarded its costs.

January 11, 2013

By: /s/ Kathleen F. Donovan
Finley T. Harckham
Kathleen F. Donovan
David P. Bender Jr. (admitted pro hac vice)
Caroline R. Hurtado (admitted pro hac vice)
Michael J. Stoner (admitted pro hac vice)
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
P: (212) 278-1000
F: (212) 278-1733

imanage-175423.1

*Attorneys for the City of San Diego*

## CERTIFICATE OF SERVICE

I, Kathleen F. Donovan, HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically via Pacer's Electronic Case Filing System (ECF), on this 11th day of January, 2013 upon all counsel of record:

| | |
|---|---|
| Christine Megna Van Gelder *(Pro Hac Vice)*<br>Jessica Arlauckas Bohl<br>Christine M. Megna<br>Duane Morris, LLP<br>1540 Broadway<br>New York, NY 10036<br>(212) 692-1000<br>Fax: (212) 692-1020 | Counsel for Indian Harbor Insurance Company |
| Jessica E. Lalonde *(Pro Hac Vice)*<br>Max H. Stern *(Pro Hac Vice)*<br>Duane Morris, LLP<br>One Market Plaza, Spear Tower<br>San Francisco, CA 94105<br>(415) 957-2139<br>Fax: (415) 276-5887 | Counsel for Indian Harbor Insurance Company |

17

/s/ Kathleen F. Donovan
                                              KATHLEEN F. DONOVAN, ESQ.

imanage-175423.1