**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
                                :    Case No. 12 CIV 5787 (JGK)

INDIAN HARBOR INSURANCE COMPANY,  :       ECF Case
                                :

                Plaintiff,      :    **INDIAN HARBOR INSURANCE**
                                :    **COMPANY'S STATEMENT OF**
                                :    **UNDISPUTED MATERIALS FACTS**
          -against-         :    **PURSUANT TO LOCAL CIVIL**
                                :    **RULE 56.1**
THE CITY OF SAN DIEGO,         :
                                :

               Defendant.     :    Courtroom:   12B
                                :    Judge:       Hon. John G. Koeltl
                                :
                                :    Complaint Filed:  July 27, 2012
                                :    F.A.C. Filed:      August 14, 2012
-----------------------------------------------------------X

       Pursuant to Rule 56.1 of the Local Civil Rules for the United States District Court for the

Southern District of New York, plaintiff Indian Harbor Insurance Company ("Indian Harbor")

respectfully submits the following statement of material facts ("Statement") as to which there is

no genuine issue to be tried.[1]

**<u>Insurance Policy</u>**

       1.      The Indian Harbor insurance policy that is the subject of this action names the

City as an Additional Named Insured.  (See Declaration of Max H. Stern ("Stern Dec."), Exh. 1,

Endorsement #005.)

///

///

///

///

///

---

[1] The defined terms set forth in Indian Harbor's accompanying memorandum of law are adopted
and used herein.

2.      That policy provides, in relevant part, as follows:

L.      Choice of Law -- All matters arising hereunder including questions related to the validity interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

(Stern Dec., Exh. 1, p. 13.)

3.      The policy also provides:

A.      As a condition precedent to the coverage hereunder, in the event any CLAIM is made against the INSURED for LOSS or REMEDIATION EXPENSE, or any POLLUTION CONDITION is first discovered by the INSURED that results in a LOSS or REMEDIATION EXPENSE:

1.      The INSURED shall forward to the Company or to any of its authorized agents every demand, notice, summons, order or other process received by the INSURED or the INSURED's representative as soon as practicable; and

2.      The INSURED shall provide to the Company, whether orally or in writing, notice of the particulars with respect to the time, place and circumstances thereof, along with the names and addresses of the injured and of available witnesses.  In the event of oral notice, the INSURED agrees to furnish to the Company a written report as soon as practicable.

(Stern Dec., Exh. 1, p. 9.)

4.      The following definitions are included in the policy:

D.      **CLAIM** means any demand(s), notice(s) or assertion(s) of a legal right alleging liability or responsibility on the part of the INSURED and shall include but not be limited to lawsuit(s), petition(s), order(s) or government and/or regulatory action(s), filed against the INSURED.

2

*     *     *

**J.**    **LOSS** means monetary judgment, award or settlement of compensatory damages as well as related punitive, exemplary or multiplied damages where insurance coverage is allowable by law arising from . . . PROPERTY DAMAGE.

*     *     *

**S.**    **PROPERTY DAMAGE** means:

1.    physical injury to or destruction of tangible property, including the resulting loss of use thereof, and including the personal property of third parties;

2.    loss of use of such property that has not been physically injured or destroyed;

3.    diminished third party property value; and/or

4.    NATURAL RESOURCE DAMAGE,

Caused by any POLLUTION CONDITION.

PROPERTY DAMAGE does not include REMEDIATION EXPENSE. (Stern Dec., Exh. 1, pp. 2-4.)

5.    The policy contains limits of liability of $10,000,000 each POLLUTION CONDITION, $50,000,000 aggregate liability, and a $500,000 Self-Insured Retention applicable to each POLLUTION CONDITION.  (Stern Dec., Exh. 1, p. 3; Declaration of J. Robert McMahon ("McMahon Dec.") ¶ 4.)

6.    Per Endorsement #025, the policy contains a sublimit of $10,000,000 each POLLUTION CONDITION, and a $10,000,000 total Aggregate Liability shall apply to each INSURED.  (Stern Dec., Exhibit 1, Endorsement #025; McMahon Dec. ¶ 4.)

7.    The policy was issued from Exton, Pennsylvania and delivered in Newport Beach, California; it was not issued or delivered in New York.  (Stern Dec., Exh. 1, pp. 1, 3; McMahon Dec. ¶ 5.)

3

**Claims Giving Rise to This Lawsuit and Notice to Indian Harbor of Same**

8.      The City has stated that the underlying claims seek almost $40 million from the City.  (See City Letter, at Docket, Doc. No. 5.)

**Grande North Claim**

9.      The City received notice of a claim by The Grande North at Santa Fe Place Homeowners Association on August 13, 2009 through a form filed with the City entitled "Claim Against the City of San Diego."  (Stern Dec., Exh. 2; Request for Judicial Notice ("RJN") ¶ 1.)

10.      This form alleged:

The Association is informed and believes and thereon alleges that sewer gases containing hydrogen sulfide (among other things) in the City of San Diego's 36 inch sewer main along Pacific Coast Highway are migrating into the Association's building systems causing corrosion and other damage to, among other things, the building's waste and vent systems.

*      *      *

The sewer main at issue is owned and maintained by the City of San Diego.

*      *      *

The known property damage at this time presently consists of corroded waste and vent pipes, as well as investigative and legal fees.

(Id.)

11.      The City denied the claim on August 24, 2009, stating that it was "not presented within the 6 (six) months after the event or occurrence as required by law."  (Stern Dec., Exh. 3; RJN ¶ 2.)

12.      On September 9, 2009, counsel for the Grande North HOA wrote a letter to the City regarding "a potentially deadly condition emanating from the City property."  (Stern Dec., Exh. 4.)

13.      The City reiterated its denial of the Grande North claim in a September 29, 2009 letter.  (Stern Dec., Exh. 5; RJN ¶ 3.)

14.     The Grande North HOA filed a lawsuit against the City and other defendants on September 9, 2009.  (Stern Dec., Exh. 7; RJN ¶ 4.)

15.     As against the City, the Grande North complaint contains causes of action for Inverse Condemnation, Dangerous Condition, Nuisance, Trespass, and Injunctive Relief.  (Id.)

16.     The lawsuit seeks costs for correction of the alleged problems, damages for diminution in value, relocation costs, and certain repairs.  (Id.)

17.     The complaint was served on the City on September 11, 2009.  (Stern Dec., Exh. 8; RJN ¶ 5.)

18.     The City filed an answer to the Grande North lawsuit on November 2, 2009. (Stern Dec., Exh. 9; RJN ¶ 6.)

19.     A First Amended Complaint was filed in the Grande North lawsuit on June 23, 2011, adding class allegations.  (Stern Dec., Exh. 10; RJN ¶ 7.)

20.     In an October 19, 2011 memorandum from the Office of the City Attorney of the City of San Diego to California State Association of Counties Excess Insurance Authority, the City stated that the Grande North HOA was seeking $29 million in damages.  (Stern Dec., Exh. 11.)

21.     A Second Amended Complaint was filed on December 23, 2011, adding allegations related to attorneys' fees.  (Stern Dec., Exh. 12; RJN ¶ 8.)

22.     The City provided notice to Indian Harbor of the Grande North Claim on March 26, 2012 in an email to Indian Harbor by the City's broker.  (Stern Dec., Exh. 13; Declaration of J. Robert McMahon ("McMahon Dec."), ¶ 6.)

23.     On April 4, 2012, Indian Harbor acknowledged receipt of the notice.  (Stern Dec., Exh. 14; McMahon Dec., ¶ 6.)

24.     The April 4, 2012 letter reserved Indian Harbor's rights to deny coverage based on the City's late notice of the claim and requested various information related to the claim.  (Id.)

25.     The City provided initial information and 23 CDs (containing the City's production in the Grande North matter, bates range 1 to 37,050) in an April 17, 2012 letter, and a CD of pleadings in an April 19, 2012 letter.  (Stern Dec., ¶ 16.)

26.     In a May 4, 2012 letter, Indian Harbor's coverage counsel followed up with the City regarding some of the requests for information set forth in Indian Harbor's April 4, 2012 letter and requested additional documents.  (Id.)

27.     On May 24, 2012, the City provided Indian Harbor with an additional 25 CDs in response to those requests, totaling more than 60,000 pages.  (Id.)

28.     After completing its investigation, on July 27, 2012 Indian Harbor denied coverage to the City based on the City's late notice of the Grande North claim.  (Stern Dec., Exh. 14; McMahon Dec., ¶ 7.)

**235 On Market Claim**

29.     The City received notice of a claim by 235 On Market Homeowners Association on May 19, 2011 through a form filed with the City entitled "Claim Against the City of San Diego."  (Stern Dec., Exh. 16; RJN ¶ 9.)

30.     This form alleged as follows: "There is a significant odor and corrosion problem in the building waste and vent system.  This is directly attributed to sewer gasses containing hydrogen sulfide (among other things) which originate in the City sewer main."  (Id.)

31.     The City denied the claim in a letter dated June 23, 2011.  (Stern Dec., Exh. 17; RJN ¶ 10.)

32.     The 235 On Market HOA filed suit against the City and other defendants on September 2, 2011.  (Stern Dec., Exh. 19; RJN ¶ 11.)

33.     As against the City, the complaint contains causes of action for Inverse Condemnation and Dangerous Condition.  (Id.)

34.     The lawsuit alleges that "the Subject Property has been repeatedly damaged and is continuing to be damaged by introduction of hydrogen sulfide gases from the CITY's Main

Sewer Line into the Subject Project, which has caused corrosion of the plumbing lines and sewage backups." (Id.)

35.     The lawsuit seeks costs for correction of the alleged problems, damages for diminution in value, relocation costs, and certain repairs. (Id.)

36.     The complaint was served on the City on September 9, 2011. (Stern Dec., Exh. 20; RJN ¶ 12.)

37.     The City filed an answer on October 4, 2011. (Stern Dec., Exh. 21; RJN ¶ 13.)

38.     The City provided first notice to Indian Harbor of the 235 On Market Claim on May 25, 2012 through an email from the broker. (Stern Dec., Exh. 22; McMahon Dec., ¶ 8.)

39.     Indian Harbor acknowledged receipt of the notice on June 7, 2012. (Stern Dec., Exh. 23; McMahon Dec., ¶ 8.)

40.     This letter reserved Indian Harbor's rights to deny coverage on a number of bases, including late notice, and requested information from the City. (Id.)

41.     The City provided additional information to Indian Harbor on June 7, 2012. (McMahon Dec., ¶ 8.)

42.     On July 27, 2012, Indian Harbor denied coverage to the City based on the City's late notice of the 235 On Market Claim. (Stern Dec., Exh. 24; McMahon Dec., ¶ 9.)

**Centex Claim**

43.     On April 17, 2009, Element Owners Association filed a lawsuit against Centex Home, Centex Real Estate Corporation, Centex Construction Company, Inc., and Balfour Beatty Construction Company (collectively, "Centex") and others, alleging various construction defects related to an eight-story condominium building. (Stern Dec., Exh. 26; RJN ¶ 17.)

44.     Centex sent the City a letter on March 28, 2012 that enclosed a "Claim Against the City of San Diego" that was filed with the City on April 2. (Stern Dec., Exh. 27; RJN ¶ 14.)

45.      The claim alleged: "On February 3, 2012, parties to the lawsuit Element Owners Association v. Centex Homes, et al., removed and inspected cast iron waste piping at the above referenced address in response to Plaintiff's claims of defective and leaking pipes. The

inspections revealed crystallization on the piping as a result of hydrochloric gas emissions emanating from the city of San Diego's sewer system."  (Id.)

46.     The City initially responded to the claim on April 9, 2012, noting an insufficiency in the submission.  (Stern Dec., Exh. 28; RJN ¶ 15.)

47.     The City formally denied the claim by Centex on May 11, 2012.  (Stern Dec., Exh. 29; RJN ¶ 16.)

48.     Centex filed a motion for relief from the claim requirement and leave to file a cross-complaint against the City, which was denied by the court.  (Stern Dec., Exh. 30; RJN ¶ 18.)

49.     The City provided first notice of the Centex Claim to Indian Harbor on May 25, 2012, through an email from the broker.  (Stern Dec., Exh. 31; McMahon Dec., ¶ 10.)

50.     Indian Harbor acknowledged receipt of the notice on June 7, 2012.  (Stern Dec., Exh. 32; McMahon Dec., ¶ 10.)

51.     This letter reserved Indian Harbor's rights to deny coverage on a number of bases, including late notice, and requested information from the City.  (Id.)

///

///

///

///

///

///

///

///

///

///

///

///

52.     The City provided additional information to Indian Harbor on June 7, 2012. (McMahon Dec., ¶ 10.)


Dated: February 1, 2013

**DUANE MORRIS LLP**

Attorneys for Plaintiff Indian Harbor Insurance Company

By:     /s/ Max H. Stern
Max H. Stern

Max H. Stern (*pro hac vice*)
Jessica E. La Londe (*pro hac vice*)
DUANE MORRIS LLP
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
mhstern@duanemorris.com
jelalonde@duanemorris.com


**DUANE MORRIS LLP**
Attorneys for Plaintiff Indian Harbor Insurance Company

Sheila Raftery Wiggins
Jessica A. Bohl
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
Tel. (212) 692-1000
Fax. (212) 692-1020
srwiggins@duanemorris.com
jabohl@duanemorris.com

DM1/3656270

9