**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY,<br><br>               Plaintiff,<br><br>     vs.<br><br>THE CITY OF SAN DIEGO,<br><br>              Defendant | Case No. 12-cv-5787 (JGK-KNF)<br><br>       ECF Case<br><br><br><br>Courtroom:  12B<br>Judge:        Hon. John G. Koeltl<br><br>Counterclaim Filed:  July 27, 2012<br>F.A.C. Filed:       August 14, 2012 |

## CITY OF SAN DIEGO'S OPPOSITION TO INDIAN HARBOR'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................1

STATEMENT OF FACTS ....................................................................2

I.   THE INDIAN HARBOR INSURANCE POLICY ...............................2

II.  THE UNDERLYING CLAIMS ..........................................................5

STANDARD FOR SUMMARY JUDGMENT ...........................................6

DISCUSSION ......................................................................................6

III. THE COURT NEED NOT RESOLVE ANY CHOICE OF LAW ISSUES,

     BECAUSE NEW YORK LAW REQUIRES THAT THIS COURT DENY

     INDIAN HARBOR'S MOTION FOR SUMMARY JUDGMENT ...................6

IV.  INSURANCE LAW SECTION 3240(A)(5) MANDATES APPLICATION

     OF THE NOTICE-PREJUDICE RULE WITH RESPECT TO THE INDIAN

     HARBOR POLICY ........................................................................7

     A.   Insurance Code Section 3420(a)(5) Adopts the Notice-Prejudice Rule In

          New York ..........................................................................7

     B.   The New York Choice of Law Clause and the New York Jurisdiction and Venue

          Clause Create a Reasonable Expectation on Behalf of the City That The

          Policy Was Issued From New York ...........................................9

V.   THE COURT MUST REJECT INDIAN HARBOR'S ATTEMPT TO

     ENFORCE A CONTRACTUAL PROVISION WHICH VIOLATES NEW

     YORK PUBLIC POLICY ..................................................................11

i

A.   The Notice Provision Of the Indian Harbor Policy Violates New York Public Policy ................................................................ 11

B.   Indian Harbor's Cases Are Inapposite To The Present Dispute ............................. 14

VI.  IF THE COURT INTERPRETS THE NOTICE PROVISION OF THE POLICY AS AN ENFORCEABLE CONDITION PRECEDENT, THE COURT SHOULD EXCUSE ITS NON-OCCURRENCE TO AVOID DISPROPORTIONATE FORFEITURE, BECAUSE THE NOTICE CONDITION WAS NOT A MATERIAL PART OF THE AGREED EXCHANGE ..... 16

A.   City Will Lose Its Rights To The Agreed Exchange After Substantial Reliance Through Its Payment Of Insurance Premiums .......................................... 16

B.   City's Payment Of Insurance Premiums Clearly Conferred A Benefit To Indian Harbor ........................................................ 17

C.   The Notice Provision In The Insurance Policy Was Not A Material Part Of The Agreed Exchange ................................................ 17

D.   To Avoid A Disproportionate Forfeiture, The Court Should Excuse The Non-Occurrence Of An Immaterial Condition Precedent ....................................... 17

VII.  EVEN ASSUMING THAT THE COURT DOES NOT APPLY THE NOTICE-PREJUDICE RULE, THE COURT MUST STILL DENY INDIAN HARBOR'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE CITY'S NOTICE WAS NOT UNREASONABLY LATE AS A MATTER OF LAW ................................................................ 19

A.   The City's Reporting Of The Underlying Claims Was Reasonable In Light Of The Policy Language Which Requires That The Claim

Be Reported During The Policy Period ..................................................... 20

B.   The City's Reporting Of The Underlying Claims Was Within

A Reasonable Period Considering The City's Self-Insured Retention

Has Not Been Exhausted ......................................................................... 22

C.   By Reporting The Underlying Claims Within The Policy Period,

And Before Any Of Indian Harbor's Duties Or Obligations Were

Triggered, The City Acted Reasonably In Reporting The Claim ........................... 23

CONCLUSION ......................................................................................................... 24

imanage-177027.3

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*25 Ave. C New Realty, LLC v. Alea N. Am. Ins. Co.,*

    96 A.D.3d 489 (N.Y. App. Div. 1st Dep't 2012) ................................................. 14

*64th Associates, LLC v. Manhattan Eye, Ear & Throat Hosp.,*

    2 N.Y.3d 585 (2004) ................................................. 11

*Argo Corp. v. Greater N.Y. Mut. Ins. Co.,*

    4 N.Y.3d 332 (2005) ................................................. 7

*Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.,*

    448 F.3d 573 (2d Cir. 2006) ................................................. 11

*CFCU Community Credit Union v. Hayward,*

    552 F.3d 253 (2d Cir. 2009) ................................................. 8

*Christiana Gen. Ins. Corp. of New York v. Great Am. Ins. Co.,*

    979 F.2d 268 (2d Cir. 1992) ................................................. 19

*City of New York v. Philadelphia Indem. Ins. Co.,*

    54 A.D.3D 709 (2d Dep't 2008) ................................................. 20

*Genova v. Regal Marine Indus., Inc.,*

    309 A.D.2D 733 (2nd Dep't 2003) ................................................. 19

*Green Door Realty Corp. v. TIG Ins. Co.,*

    329 F.3d 282 (2d Cir. 2003) ................................................. 7

*Haag v. Barnes,*

    207 N.Y.S.2d 624 (1st Dep't 1960) ................................................. 11

*Marino v. New York Tel. Co.,*

    944 F.2d 109 (2d Cir. 1991) ............................................................. 10

*Mighty Midgets, Inc., v. Centennial Insurance Co.,*

    47 N.Y.2d 12 (1979) ............................................................. 19, 23

*Mt. Hawley Ins. Co. v. Abraham Little Neck Development Group, Inc.,*

    825 F.Supp.2d 384 (E.D.N.Y. 2011) ............................................................. 14

*Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.,*

    86 N.Y.2d 685 (1995) ............................................................. 16

*Pramco III, LLC v. Partners Trust Bank,*

    842 N.Y.S.3d 174 (2007) ............................................................. 16

*Rockland Exposition, Inc. v. Great Am. Assur. Co.,*

    445 Fed.Appx. 387 (2d Cir. 2011) ............................................................. 14

*Sologub v. City of New York,*

    202 F.3d 175 (2d Cir. 2000) ............................................................. 6

*Straus & Co. v. Canadian Pacific Ry. Co.,*

    254 N.Y.407 (1930) ............................................................. 11, 12

*Tower Ins. Co. of N.Y. v. Classon Hgts, LLC.,*

    82 A.D.3D 632 (2011) ............................................................. 14

*Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.,*

    748 F.2d 118 (2d Cir. 1984) ............................................................. 19

*Vatore v. Comm's of Consumer Affairs,*

    83 N.Y.2d 645 (1993) ............................................................. 8

**<u>Other</u>**

N.Y. Insurance Law § 3420(a)(5) .............................................................. 1, 7, 8, 9, 10, 12, 13, 15

Restatement (Second) of Contracts § 229 ................................................................................ 16

imanage-177027.3

## PRELIMINARY STATEMENT

Defendant City of San Diego ("City") respectfully submits the following memorandum of law in opposition to the summary judgment motion of Indian Harbor Insurance Company ("Indian Harbor").

Indian Harbor argues in its motion that under New York law, it has no duty to defend or indemnify the City for claims made by the Grande North Homeowners Association[1], 235 on Market Homeowners Association[2], and Centex[3] (collectively, the "Underlying Claims") on the grounds that notice of the Underlying Claims was not given as soon as practicable. Indian Harbor's motion for summary judgment must be denied for the following reasons:

First, Insurance Law section 3420(A)(5) mandates application of the notice-prejudice rule with respect to the Indian Harbor Policy;

Second the Court cannot enforce the notice provision in the policy because it is contrary to public policy;

Third, in the event that the Court determines that the notice provision is an enforceable condition precedent, the Court should excuse the non–occurrence of that condition to avoid a disproportionate forfeiture; and

Fourth, the City's reporting of the Underlying Claims was not late as a matter of law given the applicable facts and circumstances.

---

[1] The claim presented by the Grande North Homeowners Association would proceed to litigation in the matter styled *Grande North at Santa Fe Place v. Bosa Development et. al.*, Case No. 37-200900098057-CU-CD-CTL.

[2] The claim presented by the 235 on Market Homeowners Association would proceed to litigation in the matter styled *235 on Market Homeowners Association v. 235 Market, LLC et. al.*, Case  No. 37-2011-000974.4-CU-CD-CTL

[3] The claim presented by Centex involved the litigation styled *Element Owners Association v. Centex Homes, et. al.*

imanage-177027.3

Accordingly, summary judgment cannot be granted in Indian Harbor's favor.

## STATEMENT OF FACTS

### I.   THE INDIAN HARBOR INSURANCE POLICY.

This action arises out of a dispute between the City of San Diego ("City") and Indian Harbor Insurance Company ("Indian Harbor") regarding the insurance coverage available to the City under a Pollution and Remediation Legal Liability Policy bearing the number PEC002076401 (the "Indian Harbor Policy").[4]

The Indian Harbor Policy was purchased by the California State Association of Counties CSAC-2 ("CSAC").  (Indian Harbor Policy, Declarations, Item 1)  The City of San Diego is an Additional Named Insured to the Indian Harbor Policy.  (Indian Harbor Policy, End. #005)  The Indian Harbor Policy was not issued or delivered to CSAC prior to July 2009.  (City of San Diego's Separate Statement of Undisputed Material Facts ("City SSUMF"), ¶ 55; Del Muro Dec., ¶ 4).  The Indian Harbor Policy has a Policy Period from July 1, 2009 until July 1, 2012. (Indian Harbor Policy, Declarations, Item 2).  The Indian Harbor Policy cost CSAC $756,947 in policy premiums.  (Indian Harbor Policy, Declarations, Item 7).  The premiums due under the Indian Harbor Policy are paid by contributions from the CSAC-EIA Members covered under the Indian Harbor Policy.  (City SSUMF, ¶ 56; Del Muro Dec., ¶ 5)  As a Member of CSAC, the City paid $97,591.00 of that premium as a lump sum in July 2009.  (City SSUMF, ¶ 57; Del Muro Dec., ¶ 6)

On the very first page of the Indian Harbor Policy, it is stated that:

THIS IS A "CLAIMS MADE AND REPORTED" POLICY.

THIS POLICY REQUIRES THAT A CLAIM BE MADE

---

[4] A true and correct copy of the Indian Harbor Policy is attached to the Declaration of Max H. Stern, ¶ 2, Exh. 1.

> AGAINST THE INSURED DURING THE POLICY PERIOD
> AND REPORTED TO THE COMPANY DURING THE POLICY
> PERIOD OR, WHERE APPLICABLE, THE EXTENDED
> REPORTING PERIOD.

(Indian Harbor Policy, p. 1)

Virtually identical language appears at the very top of the Declarations Page in boxed and highlighted text.  (Indian Harbor Policy, Declarations, p. 1).

Coverage A of the Indian Harbor Policy, captioned "Pollution Legal Liability," provides that:

> The Company will pay on behalf of the INSURED for LOSS and
> related LEGAL EXPENSE resulting from any POLLUTION
> CONDITION on, at, under or migrating from any COVERED
> LOCATION, which the INSURED has or will become legally
> obligated to pay as a result of a CLAIM first made against the
> INSURED during the POLICY PERIOD and reported to the
> Company, in writing by the INSURED, during the POLICY
> PERIOD or, where applicable, the EXTENDED REPORTING
> PERIOD.

(Indian Harbor Policy, I.A., p. 1)

CLAIM is defined under the Indian Harbor Policy as:

> [A]ny demand(s), notice(s) or assertion(s) of a legal right alleging
> liability or responsibility on the part of the INSURED and shall
> include but not be limited to lawsuit(s), petition(s), order(s) or

3

government and/or regulatory action(s), filed against the

INSURED.

(Indian Harbor Policy, II.D., p. 2)

LOSS is defined under the Indian Harbor Policy as:

[M]onetary judgment, award or settlement of compensatory

damages as well as related punitive, exemplary or multiplied

damages where insurance coverage is allowable by law arising

from:

1.      BODILY INJURY; and/or

2.      PROPERTY DAMAGE.

(Indian Harbor Policy, II.J., p. 3)

Legal Expense is defined under the Indian Harbor Policy as:

[L]egal costs, charges and expenses incurred in the investigation,

adjustment or defense of any CLAIM for LOSS or

REMEDIATION EXPENSE, or in connection with the payment of

any REMEDIATION EXPENSE as applicable, and shall include

any necessary expert fees paid to experts retained by defense

counsel.

LEGAL EXPENSE does not include the time and expense incurred

by the INSURED in assisting in the investigation or resolution of a

CLAIM or in connection with REMEDIATION EXPENSE,

including but not limited to the costs of the INSURED'S in-house

counsel, salary charges of regular employees or officials of the

4

INSURED, and fees and expenses of supervisory counsel retained

by the INSURED.

(Indian Harbor Policy, II.I, p. 2)

## II.   THE UNDERLYING CLAIMS.

On August 13, 2009, during the Policy Period, the City received a government claim from the Grande North Homeowner's Association.  (Indian Harbor Separate Statement of Undisputed Material Facts ("Indian Harbor SSUMF") ¶ 9).  On May 23, 2012, still within the Policy Period, the City reported the Grande North claim to Indian Harbor.  (City SSUMF, ¶ 58; Del Muro Dec., ¶ 7).  At the time that the City had reported the Grande North claim to Indian Harbor, the City only incurred $347,011.50 in expenses contributing to the $500,000 self-insured retention.  (City SSUMF, ¶ 60; Del Muro Dec., ¶ 9)

On May 19, 2011, during the Policy Period, the City received a government claim from the 235 on Market Homeowner's Association.  (Indian Harbor SSUMF, ¶ 29).  On May 24, 2012, the City reported the 235 on Market claim to Indian Harbor.  (City SSUMF, ¶ 61; Del Muro Dec., ¶ 10)  At the time that the City had reported the 235 on Market claim to Indian Harbor, the City only incurred $3,883.76 in expenses contributing to the $500,000 self-insured retention.  (City SSUMF, ¶ 62; Del Muro Dec., ¶ 11)

On March 28, 2012, during the Policy Period, the City received a government claim from Centex.  (Indian Harbor SSUMF, ¶ 44).  On May 24, 2012, still within the Policy Period, the City reported the Centex claim to Indian Harbor.  (City SSUMF, ¶ 63; Del Muro Dec., ¶ 14)  At the time that the City had reported the Centex claim to Indian Harbor, the City only incurred $2,827.70 in expenses contributing to the $500,000 self-insured retention.  (City SSUMF, ¶ 64;Del Muro Dec., ¶ 13)

5

Each of the Underlying Claims was indisputably made and reported during the Policy Period.

## STANDARD FOR SUMMARY JUDGMENT

"Essential to success on a motion for summary judgment is a showing by the moving party that there are no genuine issues of material fact *and* that it is entitled to judgment as a matter of law." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000). "The district court 'must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *Id.* When reasonable persons, applying the proper legal standards, could differ in their responses. . . ., the question is one for a jury." *Id.*

## DISCUSSION

## III.     THE COURT NEED NOT RESOLVE ANY CHOICE OF LAW ISSUES, BECAUSE NEW YORK LAW REQUIRES THAT THIS COURT DENY INDIAN HARBOR'S MOTION FOR SUMMARY JUDGMENT.

For purposes of this motion only, there are no conflicts of law at issue and the City does not dispute application of New York law and public policy regarding late notice and contract interpretation. The New York legislature adopted a public policy in favor of the notice-prejudice rule and will not enforce contractual provisions that result in a disproportionate forfeiture. As Indian Harbor readily admits in its motion, it selected New York law to apply to the Policy and agreed to be bound by New York law. The City agrees, and as set forth in full herein, maintains that New York law prohibits enforcement of the notice provision in the Policy and compels the Court to deny Indian Harbor's motion.

///

///

**IV.    INSURANCE LAW SECTION 3240(A)(5) MANDATES APPLCATION OF THE**
**NOTICE-PREJUDICE RULE WITH RESPECT TO THE INDIAN HARBOR**
**POLICY.**

**A.    Insurance Code Section 3420(a)(5) Adopts The Notice-Prejudice Rule In New**
**York.**

Prior to January 17, 2009, New York courts enforced notice provisions such as the one in

the Indian Harbor Policy as a condition precedent, and the nonoccurrence of that condition

would vitiate a policyholder's coverage.  *See, e.g. Green Door Realty Corp. v. TIG Ins. Co.*, 329

F.3d 282, 287 (2d Cir. 2003); *Argo Corp. v. Greater N.Y. Mut. Ins. Co,* 4 N.Y.3d 332, 340

(2005).  This approach has been described as the "no prejudice rule."  *Argo,* 4 N.Y.3d at 340.

The "no-prejudice rule" stands in contrast to the more widely adopted "notice prejudice rule"

which prohibits an insurer from denying coverage on late notice grounds unless the delay in

reporting has prejudiced the insurer's rights.

In 2008, the New York Legislature made it illegal to issue or deliver an insurance policy

in New York after January 17, 2009 unless it contains a provision at least as favorable to the

policyholder as the following:

> A provision that failure to give any notice required to be given by
>
> such policy within the time prescribed therein shall not invalidate
>
> any claim made by the insured, injured person or any other
>
> claimant, unless the failure to provide timely notice has prejudiced
>
> the insurer, except as provided in paragraph four of this subsection.
>
> With respect to a claims-made policy, however, the policy may
>
> provide that the claim shall be made during the policy period, any

7

renewal thereof, or any extended reporting period, except as
provided in paragraph four of this subsection.   As used in this
paragraph, the terms "claims-made policy" and "extended
reporting period" shall have their respective meanings as provided
in a regulation promulgated by the superintendent.

N.Y. Insurance Law § 3420(a)(5).

Passed unanimously, Section 3420(a)(5) brought New York out of the minority of
jurisdictions which applied the "no prejudice" rule by requiring insurance companies to
affirmatively insert contractual provisions into their policies which provided for the notice-
prejudice rule.   In abandoning the "no-prejudice" rule, the New York Legislature explained that
the "no prejudice" rule "leads to an inequitable outcome with insurers collecting billions of
dollars in premiums annually, and disclaiming coverage over an inconsequential technicality."
Sponsors Memorandum in Support of Bill S8610, p. 3.[5]   The notice-prejudice rule, on the other
hand, prevents insurers "from denying coverage for claims based on a technicality.   It also
eliminates the extreme hardship placed on those who pay their premiums timely only to find at a
time of need that their policy is not available."   *Id.*

///

///

///

///

---

[5] In determining the intent of the New York Legislature, "a legislator's sponsor memo submitted contemporaneously
with the legislation 'is entitled considerable weight in determining legislative intent.'"   *CFCU Community Credit
Union v. Hayward*, 552 F.3d 253, 263 (2d Cir. 2009); *quoting, Vatore v. Comm's of Consumer Affairs*, 83 N.Y.2d
645, 651 (1993).

imanage-177027.3

**B.      THE NEW YORK CHOICE OF LAW CLAUSE AND THE NEW YORK JURISDICTION AND VENUE CLAUSE CREATE A REASONABLE EXPECTATION ON BEHALF OF THE CITY THAT THE POLICY WAS ISSUED FROM NEW YORK.**

In its effort to avoid the application of the notice-prejudice rule, Indian Harbor argues that Section 3420(a)(5) is inapplicable because the Indian Harbor Policy was not "issued or delivered" in New York.  (Indian Harbor Memo. of Law, pp. 17-19).  In support of this argument, Indian Harbor alleges that the Indian Harbor Policy was issued from Exton, Pennsylvania.  (Declaration of J. Robert McMahon, ¶ 5)  In support of this, Indian Harbor cites to the Insurance Policy evidencing this fact.  (Id)  However, search as one might, there is not a single reference to Exton, Pennsylvania in the Indian Harbor Policy.  (*See*, *e.g.,* Indian Harbor Policy)  Based on a review of the Indian Harbor Policy, there is simply no evidence which would lead anyone to even suspect that the Indian Harbor Policy was "issued" in Exton, Pennsylvania.

On the other hand, there is ample evidence which would lead a reasonable policyholder to believe that the Indian Harbor Policy was issued in New York.  The Indian Harbor Policy specifically provides that "[a]ll matters arising hereunder . . . shall be determined in accordance with the law and practice of the State of New York . . ."  (Indian Harbor Policy, IX.L, p. 13)  The Indian Harbor Policy also provides that ". . . in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company and the INSURED will submit to the jurisdiction of the State of New York . . ."  (Indian Harbor Policy, IX.K, p. 13)

Given the fact that the Indian Harbor Policy provides no information to the policyholder as to the location of its inference, the most reasonable expectation for the City would be that the Indian Harbor Policy was issued in New York – the state identified in the Choice of Law Clause

9

and the Jurisdiction and Venue Clause.  Given the fact that the most reasonable expectation for the City is that the Indian Harbor Policy was issued in New York, this Court should give effect to the City's reasonable expectation and deem the Indian Harbor Policy as one issued from New York.

Indian Harbor cites to *Marino v. New York Tel. Co.*, 944 F.2d 109 (2d Cir. 1991) in support of its argument that Section 3420 does not apply in the present circumstances.  *Marino* is distinguishable on two important grounds.  First, there was no evidence in *Marino* that it was reasonable for the policyholder to suspect that the policy was issued in New York.  While *Marino* involved a *stipulation* to New York law, the policy at issue did not contain the New York clauses specifically written into the policy.  In the present circumstances, the prevalence of New York clauses in the Indian Harbor Policy, coupled with the lack of any reference to Exton, PA, created a reasonable expectation that the policy was "issued" in New York.  Second, *Marino* dealt with the application of Insurance Law section 3420(d) which deals with the effect of an insurer's delay in disclaiming coverage on late notice.  In those circumstances, a policyholder's reasonable expectations are largely irrelevant, as the application of the statute would have no impact on the conduct of the policyholder. Rather, section 3420(d) involves the effect of an *insurer's* inaction which the policyholder has no control.  Accordingly, Indian Harbor has not meet its statutory burden on summary judgment and its motion must be denied.

///

///

///

///

///

**V.      THE COURT MUST REJECT INDIAN HARBOR'S ATTEMPT TO ENFORCE A
CONTRACTUAL PROVISION WHICH VIOLATES NEW YORK PUBLIC
POLICY.**

**A.      The Notice Provision Of The Indian Harbor Policy Violates New York Public
Policy.**

Notwithstanding the City's reasonable expectation that the Indian Harbor Policy was

issued in New York, the Court must also refuse to enforce the notice provision relied on by

Indian Harbor because it violates New York public policy.

It is axiomatic that a New York court will not enforce contractual provisions which are

contrary to New York law or public policy.  *See, e.g. Beth Israel Medical Center v. Horizon Blue*

*Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 581 (2d Cir. 2006) (applying New

York law), *64th Associates, L.L.C. v. Manhattan Eye, Ear & Throat Hosp.*, 2 N.Y.3d 585, 589-

590 (noting that courts will enforce contracts as written "unless illegal, against public policy, or

deficient in some other respect"); *Haag v. Barnes*, 207 N.Y.S.2d 624, 627 (1st Dep't 1960)

(stating that "a court will not enforce a contract though valid where made if its enforcement is

contrary to the policy of the forum").  Furthermore, "[w]here part of a contract is contrary to

public policy, and therefore unenforceable, a court may nevertheless enforce the remainder of the

contract."  *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey,*

*Inc.*, 448 F.3d 573, 581 (2d Cir. 2006) (applying New York law).

"Public policy is necessarily variable.  It changes with changing conditions.  It is

evidenced by the expression of the will of the Legislature contained in statutory enactments."

*Haag,* 207 N.Y.S.2d at 627*, quoting, Straus & Co. v. Canadian Pacific Ry. Co.*, 254 N.Y.407,

413 (1930).  By prohibiting any insurance company from issuing or delivering an insurance

policy in New York with a no-prejudice provision, the New York legislature has clearly and unmistakably adopted a public policy in favor of the notice-prejudice rule.  In attempting to avoid its contractual obligations, Indian Harbor now wants this court to enforce a contractual provision so draconian, inequitable and unfair that the New York legislature has made it illegal for any insurance company to issue or deliver an insurance policy in New York containing such a provision.  As discussed above, the New York Legislature abandoned the "no prejudice" rule because its enforcement "leads to an inequitable outcome with insurers collecting billions of dollars in premiums annually, and disclaiming coverage over an inconsequential technicality." Sponsors Memorandum in Support of Bill S8610, p. 3. The notice-prejudice rule was adopted to prevents insurers "from denying coverage for claims based on a technicality.  It also eliminates the extreme hardship placed on those who pay their premiums timely only to find at a time of need that their policy is not available."  *Id.* Furthermore, nothing in the Sponsors Memorandum indicates an intent to retain the no-prejudice rule for policies issued and delivered outside of New York.  To best effectuate the purpose of the public policy adopted by the New York Legislature, this Court must apply the notice-prejudice rule to the Indian Harbor Policy.

Indian Harbor's argument regarding the location the policy was "issued" in conflates the requirements of section 3420(a)(5) with the broader public purpose which it codifies.  As explained above, Section 3420(a)(5) requires that insurance companies issuing or delivering policies in New York affirmatively insert a contractual provision no less favorable than the notice-prejudice clause provided therein.  The requirement that an insurance company affirmatively insert a notice-prejudice clause naturally applies only to policies "issued or delivered in New York," because the New York Legislature cannot force insurance companies to insert notice-prejudice clauses into insurance policies which lack the proper connection to New

York.

However, the New York public policy established by Section 3420(a)(5) applies to all policies "insuring against liability for injury to person . . . or against liability for injury to, or destruction of property" irrespective of the technical inconsequentiality of where they were "issued or delivered." By making it illegal to issue or deliver a "no-prejudice" policy in New York after January 17, 2009, the New York Legislature has clearly indicated its preference for the application of the notice-prejudice rule.

Furthermore, Indian Harbor states that it has elected to include a New York jurisdiction, venue, and choice of law clause in its policies "to maintain uniformity, clarity, and consistency in the application of its policies, for the benefit of itself and its policyholders." (Declaration of J. Robert McMahon, ¶ 22) Indian Harbor's own stated purpose for selecting New York law is subverted by the very argument it advances. Indian Harbor advances a bizarre two-track system for interpreting notice provisions in insurance policies under New York law. Under Indian Harbor's interpretation of New York law, some policies would benefit from the notice-prejudice rule while other policies would continue to be interpreted under the "no-prejudice" rule. Considering that the Indian Harbor Policy does not even state that it was issued in Exton, Pennsylvania, Indian Harbor's argument precludes the insured from even knowing which rule applies. Such a system does nothing to advance the "uniformity, clarity, and consistency in the application of its policies" allegedly sought by Indian Harbor.

By selecting New York law to apply to the policy, Indian Harbor has agreed to be bound by the entirety of New York law, including New York's public policy against the enforcement of "no-prejudice" clauses after January 17, 2009. Public policy prohibits the enforcement of a contractual provision deemed so repugnant by the New York Legislature that it has banned that

13

provision from liability policies issued or delivered within its state.  Furthermore, treating all policies under the same standard comports with Indian Harbor's stated goals in achieving "uniformity, clarity, and consistency in the application of its policies."

Because Indian Harbor did not (and cannot) demonstrate the existence of any prejudice arising from City's reporting of the Underlying Claims, the Court must deny Indian Harbor's motion for summary judgment.

### B.      Indian Harbor's Cases Are Inapposite To The Present Dispute.

Indian Harbor cites to several New York cases which apply the "no-prejudice" rule under New York law.  (Indian Harbor Memo. of Law, pp. 16-18).  However, each and every one of those cases is distinguishable on the grounds that the insurance policy at issue was not issued or delivered after January 17, 2009. Indian Harbor cites four decisions made after the passage of Section 3420(a)(5), but *none* of those decisions dealt with an insurance policy issued after January 17, 2009.  *See, e.g. Rockland Exposition, Inc. v. Great Am. Assur. Co.* 445 Fed.Appx. 387, 389 n.1 (2d Cir. 2011) (noting that "[i]t is undisputed that Rockland's policy was issued before [January 17, 2009]"); *Mt. Hawley Ins. Co. v. Abraham Little Neck Development Group, Inc.*, 825 F.Supp.2d 384, 394 (E.D.N.Y. 2011) (noting that the policy was issued and that section 3420(a)(5) is not retroactive); *25 Ave. C New Realty, LLC v. Alea N. Am. Ins. Co.*, 96 A.D.3d 489, 491(N.Y. App. Div. 1st Dep't 2012) (noting that the policy predated the effective amendments for section 3420(a)(5)); *Tower Ins. Co. of N.Y. v. Classon Hgts., LLC*, 82 A.D.3d 632, 635 (noting that the notice-prejudice rule could not retroactively apply to a 2006 policy). Each of these cases stand for the proposition, irrelevant to this case, that the no-prejudice rule does not retroactively apply to insurance policies issued and delivered prior to January 17, 2009.

The City does not dispute that New York still applies the no-prejudice rule to policies

14

issued and delivered prior to January 17, 2009.  But Indian Harbor has not cited any cases,

because there are no cases, where a New York court has not applied the notice prejudice rule to a

policy issued or delivered after January 17, 2009.  When the policy is issued or delivered *after*

January 17, 2009, the public policy established by New York Insurance Law section 3420(a)(5)

mandates the application of the notice-prejudice rule.  And there is no dispute in this case that the

Indian Harbor policy was issued after January 17, 2009, the effective date of the amendment.

Indian Harbor's reliance on cases interpreting the terms "issued" or "delivered" also

obfuscates the public policy issue implicated in this case.  Setting aside the question of whether

the Indian Harbor Policy should be deemed "issued" or "delivered" in New York based on

Indian Harbor's insertion of a New York choice of law, venue, and jurisdiction clause, the public

policy issue in this case is not whether Indian Harbor violated Section 3420(a)(5) by selling an

insurance policy without a "notice-prejudice" clause.  The issue is whether the Court can enforce

a contractual provision which is repugnant to the New York public policy reflected in Section

3420(a)(5).  While only insurance liability policies "issued" or "delivered" in New York are

subject to the affirmative requirement of Section 3420(a)(5) to insert a notice-prejudice clause,

all insurance liability policies are subject to New York's public policy against the application of

the no-prejudice rule.  Applying New York public policy to all liability insurance policies

ensures the "uniformity, clarity, and consistency in the application of its policies" sought by

Indian Harbor.

///

///

///

///

15

**VI.    IF THE COURT INTERPRETS THE NOTICE PROVISION OF THE POLICY AS AN ENFORCEABLE CONDITION PRECEDENT, THE COURT SHOULD EXCUSE ITS NON-OCCURRENCE TO AVOID DISPROPORTIONATE FORFEITURE, BECAUSE THE NOTICE CONDITION WAS NOT A MATERIAL PART OF THE AGREED EXCHANGE.**

Under New York law, "[t]he non-occurrence of a condition may yet be excused by waiver, breach or forfeiture." *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.,* 86 N.Y.2d 685, 691 (1995). "The Restatement posits that '[t]o the extent that the on-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." *Id*., *quoting,* Restatement (Second) of Contracts § 229. A forfeiture is defined as "the denial of compensation that results when the oblige loses [its] right to the agreed exchange after [it] has relied substantially, as by preparation or performance on the expectation of that exchange." *Id.* at 691, n.2, *quoting* Restatement (Second) of Contracts § 229, comment b). To invoke the excuse of the non-occurrence of a condition on the grounds of forfeiture, (1) the party seeking to excuse a condition will lose its rights to the agreed exchange after having relied substantially, as by preparation or performance, on expectation of that exchange; (2) the party seeking to excuse a condition conferred a benefit on the other party; and (3) the condition precedent was not a material part of the agreed exchange. *Pramco III, LLC v. Partners Trust Bank*, 842 N.Y.S. 3d 174, 182 (2007).

**A.    City Will Lose Its Rights To The Agreed Exchange After Substantial Reliance Through Its Payment Of Insurance Premiums.**

The first prong of the disproportionate forfeiture analysis is that the party seeking to

excuse a condition will lose its rights to the agreed exchange after having relied substantially on the expectation of that exchange.  In reliance on the expectation of Indian Harbor' s promise to pay City's loss for the Underlying Claims, the City contributed $97,591 to CSAC to pay for the Indian Harbor Policy premiums.  (City SSUMF, ¶ 57; Del Muro Dec., ¶ 6)  Having performed through the payment of premiums with the expectation that Indian Harbor would cover these types of claims, the City now stands to lose its rights under the Indian Harbor Policy if the court accepts Indian Harbor's argument that the notice provision constitutes a non-occurring condition precedent.

**B.    City's Payment Of Insurance Premiums Clearly Conferred A Benefit To Indian Harbor.**

The second prong of the disproportionate forfeiture analysis is that the party seeking to excuse a condition conferred a benefit on the other party.  It cannot reasonably be disputed that the City of San Diego conferred a benefit on Indian Harbor.  Indian Harbor has received $756,947 in premiums from CSAC for its promise to pay the City's losses.  (Indian Harbor Policy, Declarations, Item 7)  The premiums paid by CSAC are derived from contributions made by the CSAC-EIA members covered under the Indian Harbor Policy.  (City SSUMF, ¶ 56, Del Muro Dec, ¶ 5)  Of the $756,947 in premium paid to Indian Harbor, the City contributed $97,591 of that amount.  .  (City SSUMF, ¶ 57, Del Muro Dec, ¶ 6)  The payment of $97,591 in premiums to Indian Harbor through CSAC constitutes an unmistakable benefit conferred by City to Indian Harbor.

**C.    The Notice Provision In The Insurance Policy Was Not A Material Part Of The Agreed Exchange.**

The final prong of the disproportionate forfeiture analysis is that the condition precedent

17

not be a material part of the exchange.  Prior to January 17, 2009, notice provisions were treated

as material under New York law.  However, given the New York Legislature's pronouncements

about notice provisions, this Court should deem the Indian Harbor Policy's notice provision to be

immaterial, and therefore, excusable.  In unanimously passing the 2008 Amendment to Section

3420, notice provisions such as the one in the Indian Harbor policy were described as an

"inconsequential technicality" and that its enforcement leads to an "inequitable outcome."

Sponsors Memorandum in Support of Bill S8610, p. 3.  Because the notice provision relied upon

by Indian Harbor to disclaim coverage is an "inconsequential technicality," this Court may

excuse the non-occurrence of that condition as immaterial.

### D.     To Avoid A Disproportionate Forfeiture, The Court Should Excuse The Non-Occurrence Of A Immaterial Condition Precedent.

Assuming the Court construed the notice provision in the Indian Harbor Policy as an

enforceable condition precedent, the Court should excuse the non-occurrence of that condition

on the grounds of disproportionate forfeiture.  The City has paid substantial premiums to Indian

Harbor through CSAC in reliance on Indian Harbor's promise to pay the City's Loss and Legal

Expense for the Underlying Claims.  Indian Harbor has clearly benefited from the City's

payment of these premiums.  Now that the New York Legislature had explained that the strict

enforcement of a notice provision as a condition precedent "leads to an inequitable outcome with

insurers collecting billions of dollars in premiums annually, and disclaiming coverage over an

inconsequential technicality," insurers can no longer avoid the disproportionate forfeiture

doctrine on the grounds that the notice provision is "material."  Therefore, the Court should

excuse the non-occurrence of the notice provision to avoid a disproportionate forfeiture.

///

18

**VII.   EVEN ASSUMING THAT THE COURT DOES NOT APPLY THE NOTICE-PREJUDICE RULE, THE COURT MUST STILL DENY INDIAN HARBOR'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE CITY'S NOTICE WAS NOT UNREASONABLY LATE AS A MATTER OF LAW.**

Under the strict "no prejudice" standard, it is well settled that where an insurance policy requires that notice of an occurrence be given "as soon as practicable," notice must be given with a reasonable time under the facts and circumstances of each case. *Christiana Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*, 979 F.2d 268, 275 (2d Cir. 1992); *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 122 (2d Cir. 1984); *Genova v. Regal Marine Indus., Inc.*, 309 A.D.2d 733, 734 (2d Dep't 2003). "It is well settled that the phrase 'as soon as practicable' is an elastic one, not to be defined in a vacuum.  By no means does it connote an ironbound requirement that notice be 'immediate' or even 'prompt', relative as even those concepts often are; 'soon', a term close to each of these in common parlances, is expressly qualified in the policy here by the word 'practicable'.  Nor was compliance with the insurance policy's temporal requirement to be measured simply by how long it was before the written notification came forth.  More crucial was the reason it took the time it did.  So, the provision that notice be given 'as soon as practicable' called for a determination of what was within a reasonable time in the light of the facts and circumstances of the case at hand." *Mighty Midgets, Inc. v. Centennial Insurance Co.*, 47 N.Y.2d 12, 20 (1979).

In contravention of the elastic approach described in *Might Midgets*, Indian Harbor's motion for summary judgment relies almost exclusively on measuring the number of days which elapsed between a claim being made and notice being given, while failing to give due regard to regard to the more crucial inquiry of whether or not the City acted reasonably in light of the facts

and circumstances of the case.  Unsurprisingly, the Indian Harbor ignores crucial policy language and the circumstances which demonstrate that the City acted reasonably in providing notice.

**A.      The City's Reporting Of The Underlying Claims Was Reasonable In Light Of The Policy Language Which Requires That The Claim Be Reported During The Policy Period.**

In determining the reasonableness of the City's reporting of the Underlying Claims, the Court must review such reasonableness in light of the entirety of the Indian Harbor policy.  *See, e.g. City of New York v. Philadelphia Indem. Ins. Co.,* 54 A.D.3d 709, 710 (2d Dep't 2008) (stating that "[i]n interpreting an insurance policy, the policy should be interpreted as a whole"). Considering that the Indian Harbor Policy conspicuously describes the relevant reporting period as the "Policy Period[6]" in no less than three different locations, the Court should deem the City's reporting of the Underlying Claims during the Policy Period as reasonable.

In a box located on the very first page of the Declarations to the Indian Harbor Policy and written in all-capital letters, the Indian Harbor Policy is described as follows:

> THIS IS A 'CLAIMS-MADE AND REPORTED' POLICY.  THIS POLICY  REQUIRES  THAT  A  CLAIM  BE  MADE  AGAINST THE    INSURED    DURING    THE    POLICY    PERIOD  *AND REPORTED  TO  THE  COMPANY  DURING  THE  POLICY PERIOD*  OR,  WHERE  APPLICABLE,  THE  EXTENDED

---

[6] The Policy Period is defined as "the period stated in Item 2. Of the Declarations, or any shorter period arising as a result of cancellation."  (Indian Harbor Policy, II.P)  Item 2 of the Declarations provides that for a Policy Period from July 1, 2009 to July 1, 2012.  (Indian Harbor Policy, Declarations, Item 2).

REPORTING PERIOD.

(Indian Harbor Policy, Declarations, p. 1) (emphasis added).

Virtually identical language appears on the very first page of the Indian Harbor Policy.

(Indian Harbor Policy, p. 1)

There is no dispute that the Underlying Claims were "made against the Insured during the Policy Period and reported to the Company during the Policy Period."  By arguing that the City's reporting of the Underlying Claims was unreasonably late, Indian Harbor's argument essentially renders the language "reported to the company during the policy period" a nullity.  Considering the conspicuous language stating that the policy requires reporting "during the Policy Period," the City's undisputable reporting of the claim during the Policy Period should be deemed reasonable.

The applicable insuring agreement also uses the Policy Period as the applicable reporting timeframe.  It states:

> The company will pay on behalf of the INSURED for LOSS and related LEGAL EXPENSE resulting from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION, which the INSURED has or will become legally obligated to pay as a result of a CLAIM first made against the INSURED during the POLICY PERIOD ***and reported to the Company, in writing, during the POLICY PERIOD*** or, where applicable, the EXTENDED REPORTING PERIOD.

(Indian Harbor Policy, I.A) (emphasis added).

Once again, the relevant time frame for reporting under the Indian Harbor Policy is

21

defined as the Policy Period.  If Indian Harbor wanted to limit is coverage to only claims reported as soon as practicable, then  the insuring agreement should state its obligation to pay "as a result of a CLAIM first made during the POLICY PERIOD *and reported to the Company, in writing, as soon as practicable*..."  But the Insuring Agreement does not limit its coverage to claims reported "as soon as practicable." Rather, the reporting requirement is written in reference to the Policy Period.

Throughout the Indian Harbor Policy, the applicable reporting period is described as the "Policy Period."  Given that the Policy Period provides a concrete and specific time frame (July 1, 2009 to July 1, 2012), City's reporting of the Underlying Claims during the Policy Period should be deemed reasonable by the Court.

**B.      The City's Reporting Of The Underlying Claims Was Within A Reasonable Period Considering The City's Self-Insured Retention Has Not Been Exhausted**

The Indian Harbor Policy has a $500,000 self-insured retention.  In responding to each of the Underlying Claims, Indian Harbor noted that "Indian Harbor has no obligation to defend or indemnify the City unless and until that self-insured retention is satisfied."  (Declaration of Max Stern, Exhibits 15, 24, 32).  At the time the Grande North Claim was reported, the City had only incurred $347,011.50 in expenses eroding the self-insured retention.  (City SSUMF, ¶ 60; Del Muro Dec., ¶ 9)  At the time the 235 on Market Claim was reported, the City had only incurred $3,883.76 in expenses eroding the self-insured retention.  .  (City SSUMF, ¶ 62; Del Muro Dec., ¶ 11)  At the time the Centex Claim was reported to Indian Harbor on May 25, 2012, the City had only incurred $2,827.70 in expenses eroding the self-insured retention.  .  (City SSUMF, ¶ 64; Del Muro Dec., ¶ 13)  Therefore, in no case, either individually or collectively, had the self-

insured retention been met at the time the Claim was reported.

This Court should also reject Indian Harbor's contention that the Underlying Claims were reported late in light of the fact that the self-insured retention had not been met at the time the Underlying Claims were reported.  Indian Harbor disclaimed any obligations or duties until the point in time when the self-insured retention had been exhausted by the City.  Given that the City was approximately $150,000 away from exhausting its self-insured retention at the time it gave notice, Indian Harbor received notice of the claims with ample time before any coverage obligations would be triggered.  It is unreasonable for Indian Harbor to disclaim coverage due to the timing of the notice, when Indian Harbor has stated that Indian Harbor's coverage obligations and duties had yet to be triggered.  Based on Indian Harbor's own position regarding exhaustion of the SIR, the City's reporting was reasonable.

**C.     By Reporting The Underlying Claims Within The Policy Period, And Before Any Of Indian Harbor's Duties Or Obligations Were Triggered , The City Acted Reasonably In Reporting The Claim.**

As noted above, the question of whether a claim is reported "as soon as practicable" is determined by whether the reporting of the claim was reasonable.  There is no dispute that the City reported the Underlying Claims during the Policy Period.  Furthermore, the City also reported the Underlying Claims well before Indian Harbor had any duties or obligations triggered under the policy, because the self-insured retention was still over $100,000 away from being exhausted.  Indian Harbor's motion for summary judgment asks this Court to measure the temporal requirement of the reporting provision simply by measuring the number of days between the date the claim was made and the date the claim was reported.  *Mighty Midgets,* however, dictates that the Court determine the reasonableness of the City's reporting based on

23

the relevant facts and circumstances of the case.  Based on the fact that the City reported the

Underlying Claims (1) within the Policy Period, and (2) well before the City's self-insured

retention was exhausted, the Court should find that the City acted reasonably in reporting the

Underlying Claims and deny Indian Harbor's motion on that basis.

## <u>CONCLUSION</u>

Based on the foregoing, the Court must deny Indian Harbor's motion for summary

judgment.  First, the Court must reject Indian Harbor's attempts to enforce a contractual

provision which violates New York public policy.  Second, if the Court construes the notice

provision as an enforceable condition precedent, the court should excuse the non-occurrence of

the condition precedent on the grounds of disproportionate forfeiture.  Finally, the Court must

reject Indian Harbor's motion for summary judgment, because the City acted reasonably in

reporting the Underlying Claims to Indian Harbor within the Policy Period and before any duties

had been triggered by the exhaustion of the City's self-insured retention.

February 22, 2013

By:  /s/ Caroline R. Hurtado
_____
Finley T. Harckham
Kathleen F. Donovan
David P. Bender Jr.  (admitted pro hac vice)
Caroline R. Hurtado  (admitted pro hac vice)
Michael J. Stoner   (admitted pro hac vice)
Anderson Kill & Olick, P.C.

1251 Avenue of the Americas

New York, NY  10020

P:  (212) 278-1000

F:  (212) 278-1733

*Attorneys for the City of San Diego*

24

## <u>CERTIFICATE OF SERVICE</u>

I, Caroline R. Hurtado, HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically via Pacer's Electronic Case Filing System (ECF), on this 22th day of February, 2013 upon all counsel of record:

| | |
|---|---|
| Christine Megna Van Gelder  *(Pro Hac Vice)*<br>Jessica Arlauckas Bohl<br>Christine M. Megna<br>Duane Morris, LLP<br>1540 Broadway<br>New York, NY  10036<br>(212) 692-1000<br>Fax: (212) 692-1020 | Counsel for Indian Harbor<br>Insurance Company |
| Jessica E. Lalonde *(Pro Hac Vice)*<br>Max H. Stern *(Pro Hac Vice)*<br>Duane Morris, LLP<br>One Market Plaza, Spear Tower<br>San Francisco, CA  94105<br>(415) 957-2139<br>Fax: (415) 276-5887 | Counsel for Indian Harbor<br>Insurance Company |

_____ */s/ Caroline R. Hurtado*_____
CAROLINE R. HURTADO, ESQ.