**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY,<br><br>           Plaintiff,<br><br>   vs.<br><br>THE CITY OF SAN DIEGO,<br><br>         Defendant | Case No. 12-cv-5787 (JGK-KNF)<br><br>      ECF Case<br><br><br>Courtroom:  12B<br>Judge:      Hon. John G. Koeltl<br><br>Counterclaim Filed:  July 27, 2012<br>F.A.C. Filed:      August 14, 2012 |

<u>**CITY OF SAN DIEGO'S RESPONSE TO INDIAN HARBOR'S STATEMENT OF**</u>

<u>**UNDISPUTED MATERIAL FACTS ON MOTION FOR SUMMARY JUDGMENT**</u>

Pursuant to Rule 56.1 of the Local Civil Rules for the United States District Court for the Southern District of New York, the City of San Diego respectfully submits its response to the statement of undisputed material facts submitted by Indian Harbor Insurance Company.

| INDIAN HARBOR'S UNDISPUTED MATERIAL FACT | CITY OF SAN DIEGO'S RESPONSE |
|---|---|
| **Insurance Policy** | |
| 1.   The Indian Harbor insurance policy that is the subject of this action names the City as an Additional Named Insured. (See Declaration of Max H. Stern ("Stern Dec."), Exh. 1, Endorsement #005.) | Undisputed. |
| 2.   That policy provides, in relevant part, as follows: L.   Choice of Law – All matters arising hereunder including questions related to the validity interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules). (Stern Dec., Exh. 1, p. 13.) | Undisputed. |

| | |
|---|---|
| 3.  The policy also provides:<br><br>A.  As a condition precedent to the coverage hereunder, in the event any CLAIM is made against the INSURED for LOSS or REMEDIATION EXPENSE, or any POLLUTION CONDITION is first discovered by the INSURED that results in a LOSS or REMEDIATION EXPENSE:<br><br>1.  The INSURED shall forward to the Company or to any of its authorized agents every demand, notice, summons, order or other process received by the INSURED or the INSURED's representative as soon as practicable; and<br><br>2.  The INSURED shall provide to the Company, whether orally or in writing, notice of the particulars with respect to the time, place and circumstances thereof, along with the names and addresses of the injured and of available witnesses.  In the event of oral notice, the INSURED agrees to furnish to the Company a written report as soon as practicable. | Undisputed. |

imanage-177210.1

| | |
|---|---|
| (Stern Dec., Exh. 1, p. 9.) | |
| 4.  The following definitions are included in the policy:<br><br>D.  CLAIM means any demand(s), notice(s) or assertion(s) of a legal right alleging liability or responsibility on the part of the INSURED and shall include but not be limited to lawsuit(s), petition(s), order(s) or government and/or regulatory action(s), filed against the INSURED.<br><br>*   *   *<br><br>J.   LOSS means monetary judgment, award or settlement of compensatory damages as well as related punitive, exemplary or multiplied damages where insurance coverage is allowable by law arising from . . . PROPERTY DAMAGE.<br><br>*   *   *<br><br>S.   PROPERY DAMAGE means:<br><br>1.  physical injury to or destruction of tangible property, including the resulting loss of use thereof, and including the personal property of third parties; | Undisputed. |

imanage-177210.1

| | |
|---|---|
| 2.  loss of use of such property that has not been physically injured or destroyed;<br><br>3.  diminished third party property value; and/or<br><br>4.  NATURAL RESOURCE DAMAGE, Caused by any POLLUTION CONDITION.<br><br>PROPERTY DAMAGE does not include REMEDIATION EXPENSE. | |
| 5.  The policy contains limits of liability of $10,000,000 each POLLUTION CONDITION, $50,000,000 aggregate liability, and a $500,000 Self-Insured Retention applicable to each POLLUTION CONDITION.<br><br>(Stern Dec., Exh. 1, p. 3; Declaration of J. Robert McMahon ("McMahon Dec."), ¶ 4.) | Undisputed. |
| 6.  Per Endorsement #025, the policy contains a sublimit of $10,000,000 each POLLUTION CONDITION, and a $10,000,000 total Aggregate Liability shall apply to each Insured.<br><br>(Stern Dec., Exhibit 1, Endorsement #025; | Undisputed. |

| | |
|---|---|
| McMahon Dec. ¶ 4.) | |
| 7.  The policy was issued from Exton, Pennsylvania and delivered in Newport Beach, California; it was not issued or delivered in New York.<br><br>(Stern Dec., Exh. 1, pp. 1, 3; McMahon Dec. ¶ 5.) | Disputed.  The cited evidence does not support this fact.  Indian Harbor cites to the Policy, at pages 1 and 3 (Exhibit 1 to the Stern Declaration).  Page 1 of the Policy reflects that XL's Administrative Office is in Stamford, CT, and shows a Home Office in Bismarck, ND.  Page 3 of the Policy reflects that the First Named Insured's address is in Newport Beach, California.  The evidence does not reflect that the policy was issued from Exton, Pennsylvania, nor does it support that the Policy "was not issued or delivered in New York."<br><br>This fact is also an impermissible legal conclusion.  *See* City's Objection to McMahon Dec. filed concurrently herewith. |
| **Claims Giving Rise to This Lawsuit and Notice to Indian Harbor of Same** | |
| 8.  The City has stated that the underlying claims seek almost $40 million from the City.<br><br>(See City Letter, at Docket, Doc. No. 5.) | Undisputed. |
| **Grande North Claim** | |

| | |
|---|---|
| 9. The City received notice of a claim by The Grande North at Santa Fe Place Homeowners Association on August 13, 2009 through a form filed with the City entitled "Claim Against the City of San Diego." (Stern Dec., Exh. 2; Request for Judicial Notice ("RJN") ¶ 1.) | Undisputed. |
| 10. This form alleged: The Association is informed and believes and thereon alleges that sewer gases containing hydrogen sulfide (among other things) in the City of San Diego's 36 inch sewer main along Pacific Coast Highway are migrating into the Association's building systems causing corrosion and other damage to, among other things, the building's waste and vent systems. * * * The sewer main at issue is owned and maintained by the City of San Diego. * * * The known property location at this time | Undisputed. |

imanage-177210.1

| | |
|---|---|
| presently consists of corroded waste and vent pipes, as well as investigative and legal fees. (Id.) | |
| 11. The City denied the claim on August 24, 2009, stating that it was "not presented within the 6 (six) months after the event or occurrence as required by law." (Stern Dec., Exh. 3; RJN ¶ 2.) | Undisputed. |
| 12. On September 9, 2009, counsel for the Grande North HOA wrote a letter to the City regarding "a potentially deadly condition emanating from the City property." (Stern Dec., Exh. 4.) | Undisputed. |
| 13. The City reiterated its denial of the Grande North claim in a September 29, 2009 letter. (Stern Dec., Exh., 5; RJN ¶ 3.) | Undisputed. |
| 14. The Grande North HOA filed a lawsuit against the City and other defendants on September 9, 2009. (Stern Dec., Exh. 7; RJN ¶ 4.) | Undisputed. |
| 15. As against the City, the Grande North | Undisputed. |

imanage-177210.1

| | |
|---|---|
| complaint contains causes of action for Inverse Condemnation, Dangerous Condition, Nuisance, Trespass, and Injunctive Relief.<br><br>(Id.) | |
| 16. The lawsuit seeks costs for correction of the alleged problems, damages for diminution in value, relocation costs, and certain repairs.<br><br>(Id.) | Undisputed. |
| 17. The complaint was served on the City on September 11, 2009.<br><br>(Stern Dec., Exh. 8; RJN ¶ 5.) | Undisputed. |
| 18. The City filed an answer to the Grande North lawsuit on November 2, 2009.<br><br>(Stern Dec., Exh. 9; RJN ¶ 6.) | Undisputed. |
| 19. A First Amended Complaint was filed in the Grande North lawsuit on June 23, 2011, adding class allegations.<br><br>(Stern Dec., Exh. 10; RJN ¶ 7.) | Undisputed. |
| 20. In an October 19, 2011 memorandum from the Office of the City Attorney of the City of San Diego to the California State | Undisputed. |

9

| | |
|---|---|
| Association of Counties Excess Insurance Authority, the City stated that the Grande North HOA was seeking $29 million in damages.<br><br>(Stern Dec., Exh. 11.) | |
| 21. A Second Amended Complaint was filed on December 23, 2011, adding allegations related to attorneys' fees.<br><br>(Stern Dec., Exh. 12; RJN ¶ 8.) | Undisputed. |
| 22. The City provided notice to Indian Harbor of the Grande North Claim on March 26, 2012 in an email to Indian Harbor by the City's broker.<br><br>(Stern Dec., Exh. 13; Declaration of J. Robert McMahon ("McMahon Dec."), ¶ 6.) | ***Disputed.***  The City provided notice of the Grande North Claim to Indian Harbor on March 23, 2012.<br><br>(Declaration of Christina Castillo Del Muro, ¶ 7.) |
| 23. On April 4, 2012, Indian Harbor acknowledged receipt of the notice.<br><br>(Stern Dec., Exh. 14; McMahon Dec., ¶ 6.) | Undisputed. |
| 24. The April 4, 2012 letter reserved Indian Harbor's rights to deny coverage based on the City's late notice of the claim and requested various information related to the claim. | Undisputed. |

| | |
|---|---|
| (Id.) | |
| 25. The City provided initial information and 23 CDs (containing the City's production in the Grande North matter, bates range 1 to 37,050) in an April 17, 2012 letter, and a CD of pleadings in an April 19, 2012. (Stern Dec., ¶ 16.) | Undisputed. |
| 26. In a May 4, 2012 letter, Indian Harbor's coverage counsel followed up with the City regarding some of the requests for information set forth in Indian Harbor's April 4, 2012 letter and requested additional documents. (Id.) | Undisputed. |
| 27. On May 24, 2012, the City provided Indian Harbor with an additional 25 CDs in response to those requests, totaling more than 60,000 pages. (Id.) | Undisputed. |
| 28. After completing its investigation, on July 27, 2012 Indian Harbor denied coverage to the City based on the City's late notice of the Grande North claim. | Undisputed. |

11

| | |
|---|---|
| (Stern Dec., Exh. 14; McMahon Dec., ¶ 7.) | |
| **235 On Market Claim** | |
| 29. The City received notice of a claim by 235 On Market Homeowners Association on May 19, 2011 through a form filed with the City entitled "Claim Against the City of San Diego." | Undisputed. |
| 30. This form alleged as follows: "There is a significant odor and corrosion problem in the building waste and vent systems.  This is directly attributable to sewer gasses containing hydrogen sulfide (among other things) which originate in the City's sewer main." (Id.) | Undisputed. |
| 31. The City denied the claim in a letter dated June 23, 2011. (Stern Dec., Exh. 17; RJN ¶ 10.) | Undisputed. |
| 32. The 235 On Market HOA filed suit against the City and other defendants on September 2, 2011. (Stern Dec., Exh. 19; RJN ¶ 11.) | Undisputed. |
| 33. As against the City, the complaint contains | Undisputed. |

12

imanage-177210.1

| | |
|---|---|
| causes of action for Inverse Condemnation and Dangerous Condition.<br><br>(Id.) | |
| 34. The lawsuit alleges that "the Subject Property has been repeatedly damaged and is continuing to be damaged by introduction of hydrogen sulfide gases from the CITY's Main Sewer Line into the Subject Property, which has caused corrosion of the plumbing lines and sewage backups."<br><br>(Id.) | Undisputed. |
| 35. The lawsuit seeks costs for correction of the alleged problems, damages for diminution in value, relocation costs, and certain repairs.<br><br>(Id.) | Undisputed. |
| 36. The complaint was served on the City on September 9, 2011.<br><br>(Stern Dec., Exh. 20; RJN ¶12.) | Undisputed. |
| 37. The City filed an answer on October 4, 2011.<br><br>(Stern Dec., Exh. 21; RJN ¶13.) | Undisputed. |

13

| | |
|---|---|
| 38. The City provided first notice to Indian Harbor of the 235 On Market Claim on May 25, 2012 through an email from the broker. (Stern Dec., Exh. 22; McMahon Dec., ¶ 8.) | ***Disputed.***  The City provided notice of the 235 On Market Claim to Indian Harbor on May 24, 2012. (Declaration of Christina Castillo Del Muro, ¶ 10.) |
| 39. Indian Harbor acknowledged receipt of the notice on June 7, 2012. (Stern Dec., Exh. 22; McMahon Dec., ¶ 8.) | Undisputed. |
| 40. This letter reserved Indian Harbor's rights to deny coverage on a number of bases, including late notice, and requested information from the City. (Id.) | Undisputed. |
| 41. The City provided additional information to Indian Harbor on June 7, 2012. (McMahon Dec., ¶ 8.) | Undisputed. |
| 42. On July 27, 2012, Indian Harbor denied coverage to the City based on the City's late notice of the 235 On Market Claim. (Stern Dec., Exh. 24; McMahon Dec., ¶ 9.) | Undisputed. |
| **Centex Claim** | |
| 43. On April 17, 2009, Element Owners Association filed a lawsuit against Centex | Undisputed. |

imanage-177210.1

| | |
|---|---|
| Home, Centex Real Estate Corporation, Centex Construction Company, Inc., and Balfour Beatty Construction Company (collectively, "Centex") and others, alleging various construction defects related to an eight-story condominium building. (Stern Dec., Exh. 26; RJN ¶ 17.) | |
| 44. Centex sent the City a letter on March 28, 2012 that enclosed a "Claim against the City of San Diego" that was filed with the City on April 2. (Stern Dec., Exh. 27; RJN ¶ 14.) | Undisputed. |
| 45. The claim alleged: "On February 3, 2012, parties to the lawsuit Element Owners Association v. Centex Homes, et. al., removed and inspected cast iron waste piping at the above referenced address in response to Plaintiff's claims of defective and leaking pipes.  The inspections revealed crystallization on the piping as a result of hydrochloric gas emissions emanating from the city of San Diego's | Undisputed. |

15

| | |
|---|---|
| sewer system."<br><br>(Id.) | |
| 46. The City initially responded to the claim on April 9, 2012, noting an insufficiency in the submission.<br><br>(Stern Dec., Exh. 28; RJN ¶ 15.) | Undisputed. |
| 47. The City formally denied the claim by Centex on May 11, 2012.<br><br>(Stern Dec., Exh. 29; RJN ¶ 16.) | Undisputed. |
| 48. Centex filed a motion for relief from the claim requirement and leave to file a cross-complaint against the City, which was denied by the court.<br><br>(Stern Dec., Exh. 30; RJN ¶ 18). | Undisputed. |
| 49. The City provided first notice of the Centex Claim to Indian Harbor on May 25, 2012, through an email from the broker.<br><br>(Stern Dec., Exh. 31; McMahon Dec., ¶ 10.) | ***Disputed.***  The City provided notice of the Centex Claim to Indian Harbor on May 24, 2012.<br><br>(Declaration of Christina Castillo Del Muro, ¶ 12.) |
| 50. Indian Harbor acknowledged receipt of the notice on June 7, 2012.<br><br>(Stern Dec., Exh. 32; McMahon Dec., ¶ 10.) | Undisputed. |

| | |
|---|---|
| 51. This letter reserved Indian Harbor's rights to deny coverage on a number of bases, including late notice, and requested information from the City. (Id.) | Undisputed. |
| 52. The City provided addition information to Indian Harbor on June 7, 2012. (McMahon Dec., ¶ 10.) | Undisputed. |

## <u>CITY OF SAN DIEGO'S SEPARATE STATEMENT OF UNDISPUTED FACTS</u>

## <u>IN OPPOSITION OF INDIAN HARBOR'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56.1 of the Local Civil Rules for the United States District Court for the Southern District of New York, the City of San Diego respectfully submits the following statement of material facts in support of its opposition to Indian Harbor's motion for summary judgment.

| <u>CITY OF SAN DIEGO UNDISPUTED MATERIAL FACT</u> | <u>SUPPORTING EVIDENCE</u> |
|---|---|
| 53. The City of San Diego is a municipality organized and existing under the laws of the State of California. | Declaration Of Claudia Castillo Del Muro ("Del Muro Dec."), ¶ 2. |
| 54. The City is a Member of the CSAC Excess Insurance Authority, a risk pool of California public agencies organized under California Government Code section 6500, *et. seq*. | Del Muro Dec., ¶ 3. |

imanage-177210.1

| | |
|---|---|
| 55. No earlier than July 2009, Indian Harbor Insurance Company ("Indian Harbor") issued and delivered its "Pollution and Remediation Legal Liability Policy" to the California State Association of Counties CSAC-2, designated as policy no. PEC002076401, for the policy period from July 1, 2009 to July 1, 2012 (the "Policy"). | Del Muro Dec., ¶ 4. |
| 56. The premiums due under the Policy are paid by contributions from the CSAC-EIA Members covered under the Policy, including the City. | Del Muro Dec., ¶ 5. |
| 57. The City of San Diego contributed $97,591 as a lump sum in July 2009 to CSAC-EIA for payment of the insurance premiums owed Indian Harbor under the Policy | Del Muro Dec., ¶ 6, Exh. 1. |
| 58. The Grande North Claim was reported to Indian Harbor on March 23, 2012, which is within the Policy Period. | Del Muro Dec., ¶ 7. |
| 59. The Policy contains a self-insured retention ("SIR") of $500,000. | Del Muro Dec., ¶ 8. |

imanage-177210.1

| | |
|---|---|
| 60. At the time the Grande North Claim was reported to Indian Harbor, the City had only incurred $347,011.50 in expenses eroding the SIR. | Del Muro Dec., ¶ 9, Exh. 2. |
| 61. The 235 on Market Claim was reported to Indian Harbor on May 24, 2012 which is within the Policy Period. | Del Muro Dec., ¶ 10. |
| 62. At the time the 235 on Market Claim was reported to Indian Harbor, the City had only incurred $3,883.76 in expenses eroding the SIR. | Del Muro Dec., ¶ 11, Exh. 3. |
| 63. The Centex Claim was reported to Indian Harbor on May 24, 2012, which is within the Policy Period. | Del Muro Dec., ¶ 12. |
| 64. At the time the Centex Claim was reported to Indian Harbor, the City had only incurred $2,827.70 in expenses eroding the SIR. | Del Muro Dec., ¶ 13, Exh. 4. |

imanage-177210.1

February 22, 2013

By:  /s/ Caroline R. Hurtado
      Finley T. Harckham
      Kathleen F. Donovan
      David P. Bender Jr.  (admitted pro hac vice)
      Caroline R. Hurtado  (admitted pro hac vice)
      Michael J. Stoner   (admitted pro hac vice)
      Anderson Kill & Olick, P.C.
      1251 Avenue of the Americas
      New York, NY  10020
      P:  (212) 278-1000
      F:  (212) 278-1733
      *Attorneys for the City of San Diego*

## CERTIFICATE OF SERVICE

I, Caroline R. Hurtado, HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically via Pacer's Electronic Case Filing System (ECF), on this 22[th] day of February, 2013 upon all counsel of record:

| | |
|---|---|
| Christine Megna Van Gelder  *(Pro Hac Vice)*<br>Jessica Arlauckas Bohl<br>Christine M. Megna<br>Duane Morris, LLP<br>1540 Broadway<br>New York, NY  10036<br>(212) 692-1000<br>Fax: (212) 692-1020 | Counsel for Indian Harbor<br>Insurance Company |
| Jessica E. Lalonde *(Pro Hac Vice)*<br>Max H. Stern *(Pro Hac Vice)*<br>Duane Morris, LLP<br>One Market Plaza, Spear Tower<br>San Francisco, CA  94105<br>(415) 957-2139<br>Fax: (415) 276-5887 | Counsel for Indian Harbor<br>Insurance Company |

_____/s/ Caroline R. Hurtado_____

CAROLINE R. HURTADO, ESQ.

22

imanage-177210.1