UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
INDIAN HARBOR INSURANCE COMPANY,

      Plaintiff,

  -against-           No. 12 Civ. 5787 (JGK)

THE CITY OF SAN DIEGO,

      Defendant.

CALIFORNIA STATE ASSOCIATION OF
COUNTIES EXCESS INSURANCE AUTHORITY
and INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA,

      Defendant-Intervenors.
-----------------------------------------------------------------X

**DEFENDANT AND DEFENDANT-INTERVENOR'S JOINT REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

ANDERSON KILL & OLICK, P.C.

David P. Bender (*pro hac vice*)
Caroline R. Hurtado (*pro hac vice*)
Michael J. Stoner (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020

*Attorneys for Defendant the City of San Diego*

WILLKIE FARR & GALLAGHER LLP

Mitchell J. Auslander
Kelly M. Hnatt
Christopher J. Miritello
787 Seventh Avenue
New York, New York 10019

*Attorneys for Defendant-Intervenor California State Association of Counties Excess Insurance Authority*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

I. THE INDIAN HARBOR POLICY WAS ISSUED IN NEW YORK, WHERE IT WAS SIGNED ..................................................................................................1

II. IF THE POLICY WAS NOT ISSUED IN NEW YORK, THEN APPLICATION OF NEW YORK LAW PURSUANT TO THE NEW YORK CHOICE OF LAW CLAUSE IS UNCONSTITUTIONAL ....................................................................5

III. EVEN IF NEW YORK COMMON LAW IS TO BE APPLIED, THE NEW YORK COURT OF APPEALS IS LIKELY TO REJECT THE NO-PREJUDICE RULE IN FAVOR OF A NOTICE PREJUDICE RULE IN THIS CASE ..........................8

IV. THE CITY'S NOTIFICATION OF THE CENTEX CLAIM WAS TIMELY ..................9

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

Cases                                                                                                                    Page(s)

*Allstate Ins. Co. v. Hague*,
    449 U.S. 302 (1981) ...................................................................................................5, 6, 7

*American Home Assurance Co. v. Republic Insurance Co.*,
    984 F.2d 76 (2d Cir. 1993) ..................................................................................................10

*Archer v. Equitable Life Assurance Soc'y of United States*,
    218 N.Y. 18 (1916) ................................................................................................................4

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
    151 F. Supp. 2d 526 (D.N.J. 2001) .......................................................................................6

*In re Brandon (Nationwide Mutual Insurance Co.)*,
    97 N.Y.2d 491 (2002) ...........................................................................................................9

*Briggs Ave. LLC v. Ins. Corp. of Hannover*,
    11 N.Y.3d 377 (2008) ...........................................................................................................8

*Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GMBH & Co.*,
    150 F. Supp. 2d 566 (S.D.N.Y. 2001) ................................................................................5, 7

*Hanson Production Co. v. Americas Insurance Co.*,
    108 F.3d 627 (5th Cir. 1997) ................................................................................................9

*Lehman Brothers Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*,
    179 F. Supp. 2d 118 (S.D.N.Y. 2000) ................................................................................5, 7

*Parshalle v. Roy*,
    567 A.2d 19 (Del. Ch. 1989) .................................................................................................3

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..............................................................................................................6

*Rosner v. Metropolitan Property & Liability Insurance Co.*,
    96 N.Y.2d 475 (2001) .......................................................................................................1, 4

*Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*,
    743 So. 2d 954 (Miss. 1999) ................................................................................................7

*Taggert v. Sec. Ins. Co. of New Haven, Conn.*,
    277 A.D. 1051 (2d Dep't 1950) ...........................................................................................2

*Weeks Marine, Inc. v. Am. S.S. Owners Mut. Prot. Indem. Ass'n*,
    2011 U.S. Dist. LEXIS 95358 (S.D.N.Y. Aug. 25, 2011) ...................................................8

Other Authorities

2009 N.Y. Ins. GC Opinions LEXIS (June 23, 2009) ................................................................2

N.Y. Bill Jacket, 2008 S.B. 8610, Ch. 388 ..............................................................................4

N.Y. Gen. Oblig. Law § 5-701 (2013) .....................................................................................3

Defendant the City of San Diego (the "City") and defendant-intervenor California State Association of Counties Excess Insurance Authority ("CSAC-EIA") submit this joint reply memorandum of law in further opposition to plaintiff Indian Harbor Insurance Company's motion for summary judgment.

## INTRODUCTION

Indian Harbor asks this Court to ignore its primary contact with New York — the very signature that made the Policy effective — to avoid application of New York Insurance Law section 3420(a)(5). Indian Harbor nevertheless relies on that signature when claiming that it has sufficient contacts with New York to apply New York law consistent with constitutional requirements. Indian Harbor's President's signature in New York constitutes issuance of the Policy in New York. If the signature does not constitute issuance, then there is no basis for applying New York law. That is because the only other relevant contact with New York is the New York choice of law provision itself, and that is insufficient under applicable precedent. Disregarding section 3420(a)(5), and applying New York law based solely on a choice of law provision, would deprive the City of San Diego and the CSAC-EIA of millions of dollars of insurance for pollution claims in California, where it is absolutely clear that an insurer must show prejudice to deny a claim based on late notice. That would be fundamentally unfair.

## ARGUMENT

### I. THE INDIAN HARBOR POLICY WAS ISSUED IN NEW YORK, WHERE IT WAS SIGNED.

Indian Harbor acknowledges there is no case law or other authority establishing what the term "issued" means in Insurance Law section 3420(a)(5). Citing *Rosner v. Metropolitan Property & Liability Insurance Co.*, 96 N.Y.2d 475 (2001), Indian Harbor urges this Court to interpret "issued" to mean "to send out or distribute officially." (*See* Indian Harbor's Response

Brief (Dkt. No. 86) "IH Resp." at 6) *Rosner*, however, provides no guidance as to what "issued" means in the context of section 3420(a)(5). In fact, the *Rosner* court specifically stated that, "the application of Insurance Law § 3420 to this action has not been addressed by the parties and is not in issue before us." *Id.* at 478 n.1. Addressing a question certified to it by the Second Circuit, *Rosner* considered specific language in Insurance Law § 3425(a)(7), pertaining to when nonrenewal of a personal lines policy may occur, namely "the date as of which a covered policy is first issued." *See id.* at 480. The Court never concluded what "issued," standing alone, meant, even in the context of section 3425(a)(7). Rather, it held that in order to provide a clear demarcation upon which insureds and insurers could rely, this particular phrase should be interpreted as the effective date of the policy. *See id.* at 482-83.

It is significant that throughout its opinion, the *Rosner* court referred to "execution" of the policy as a potential definitional element. *See id.* at 480. This is consistent with numerous cases stating that, in the insurance vernacular, the execution of a policy by an insurer's authorized representative constitutes an act of issuance. *See Taggert v. Sec. Ins. Co. of New Haven, Conn.*, 277 A.D. 1051, 1051-52 (2d Dep't 1950) (issuance can mean "when [the policy] is prepared and signed, as distinguished from its delivery to the insured"). (*See also* Def./Def.-Intervenor Br. (Dkt. No. 82) at 5)[1] The reason the authorized representative's signature is the critical element of the issuance of the Policy is because the Policy, which covered a three-year

---

[1] "Delivered" cannot be the touchstone of "issued" in section 3420(a)(5), as it is a separate term and therefore must be accorded its own meaning. *See, e.g., Taggert*, 277 A.D. at 1051-52; *see also* 2009 N.Y. Ins. GC Opinions LEXIS, at *4 (June 23, 2009).

period, was not effective unless and until it was signed. *See* N.Y. Gen. Oblig. Law § 5-701 (2013). Indian Harbor cites no authority to the contrary.[2]

Indian Harbor argues that if the Court construes "issued" to mean the signing of the Policy, it should be where the facsimile signature was affixed (*see* IH Resp. at 4, 8-9), not where the Authorized Representative actually put pen to paper. Indian Harbor provides no legal support for this position, which, if accepted, would make the place of issuance entirely arbitrary. After all, a facsimile signature can be "affixed" anywhere, and there would be no way to tell where this act occurred. The act that obligates the insurer is the substance of the signature, and the authority emanating from the signatory, not the piece of paper itself. *Cf. Parshalle v. Roy*, 567 A.2d 19, 27 (Del. Ch. 1989) ("The presence of a signature or signature equivalent is significant not in of itself, but because of what it represents.")

Indian Harbor's argument that the place of issuance should be where a facsimile signature is affixed, or where a policy is mailed or otherwise sent from, is also inconsistent with the rules of statutory interpretation. First, section 3420(a)(5) was enacted with a remedial aim, specifically to eliminate "inequitable outcome[s]" under existing law and to reduce "the extreme hardship placed on those who pay their premiums timely only to find out at a time of need that their policy is not available." *See* N.Y. Bill Jacket, 2008 S.B. 8610, Ch. 388. The Court of

---

[2] Indian Harbor's contention that the "last act necessary to 'issue' the policy" was the supposed "countersignature" of its Secretary, Toni Ann Perkins (*see* IH Resp. at 9), is irrelevant. Indian Harbor President, Dennis Kane's signature was necessary to bind Indian Harbor and, indeed, appears twice in the Policy, most importantly on page 4, where he, not Ms. Perkins, is identified as Indian Harbor's "Authorized Representative." (*See* CSAC-EIA SAMF (Dkt. No. 83) ¶ 55))

Appeals has held that "[w]hen . . . a remedial statute . . . replace[s], in whole or in part, common-law rules, it must be given an application, liberal and, within its language, commensurate with its purpose." *Archer v. Equitable Life Assurance Soc'y of United States*, 218 N.Y. 18, 25 (1916). Second, as the Court of Appeals noted in *Rosner*, avoiding the potential for manipulation and providing certainty in the insurance arena is "imperative" for insureds and insurance companies alike. *See* 96 N.Y.2d at 483. An interpretation that allows insurers to avoid a New York statute by administering a policy outside New York and maintaining facsimile signatures to be affixed just across the State's borders, neither furthers the statute's remedial purpose nor provides certainty for insureds. By contrast, an interpretation that fixes the place of issuance as the place where an insurer's representative obligated the insurer is a knowable fact and minimizes an insurer's ability to manipulate policy preparation so as to avoid requirements it may not like, such as section 3420(a)(5).

At a minimum, there are disputed issues of material fact about the issuance of the Policy. The Court cannot determine based on the present record what importance Mr. Kane or Indian Harbor placed on Mr. Kane's signature. It is likely that Indian Harbor has itself ascribed significance to the signature of its authorized representative in policy manuals or other documents. The facts may also show that Indian Harbor intentionally had its out-of-state policies mailed from Pennsylvania to avoid the application of section 3420(a)(5). Thus, while Indian Harbor downplays Mr. Kane's role in policy issuance, the current record is inadequate to test it. What is clear, however, is that Mr. Kane signed the Policy, his signature made it effective, and his office was in New York.

## II. IF THE POLICY WAS NOT ISSUED IN NEW YORK, THEN APPLICATION OF NEW YORK LAW PURSUANT TO THE NEW YORK CHOICE OF LAW CLAUSE IS UNCONSTITUTIONAL.

"For application of New York law to comport with due process New York must have 'a significant contact or significant aggregation of contacts' *with the parties and transaction 'creating state interests*, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GMBH & Co.*, 150 F. Supp. 2d 566, 574 (S.D.N.Y. 2001) (emphasis added) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312 (1981)). Indian Harbor's assertions that these "[t]wo types of contacts are not required" and that "there is only a constitutional problem when there is only a nonsignificant contact" (IH Resp. at 12), are contradicted by a plain reading of *Allstate* and its progeny.

The Supreme Court in *Allstate* expressly identified and analyzed both party and transaction-specific contacts. *See Allstate Ins. Co.*, 449 U.S. at 319 ("[r]espondent's residence and subsequent appointment in Minnesota as personal representative of her late husband's estate constitute a Minnesota contact which gives Minnesota an interest in respondent's recovery . . ."); *id.* at 314-15 ("the occurrence of a crash fatal to a Minnesota employee in another State is a Minnesota contact" creating a state interest). Similarly, in *Cuccioli*, a case involving at least one contract with a New York choice of law clause, Judge Kaplan also identified both party and transaction-specific contacts with New York that met constitutional standards. *See* 150 F. Supp. 2d at 574 ("Plaintiff is a New York domiciliary, and the dispute arises from contracts that both plaintiff and defendant negotiated in New York. . . . Defendant's agreements provide for ongoing contacts between defendant and New York."). Contrary to Indian Harbor's presentation of Judge Keenan's decision in *Lehman Brothers Commercial Corp. v. Minmetals International Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118 (S.D.N.Y. 2000) (*see* IH Resp. at 11-12),

nowhere does it state, let alone hold, that constitutional questions arise only when there is no connection between the state whose law is to be applied and the parties or the transaction.

Indian Harbor's search for alleged party or transactional contacts with New York has yielded nothing. Indian Harbor's Response explicitly states: "*Every* action specifically related to this Policy occurred in Pennsylvania." (IH Resp. at 1) Indian Harbor thus only repeats that XL Specialty's Pennsylvania-based claims department "ultimately reports to [XL Insurance's] Global Head of Claims in New York," and that Indian Harbor currently has certain officers and directors in New York. (*See id.* at 14) None of these New York-based personnel had anything to do with this Indian Harbor Policy, or even the pollution claims at issue. (*See* Hnatt Decl. Ex. A (Dkt. No. 84-1) (McMahon Depo. Tr. at 14:21-15:2)) The mere presence of Indian Harbor personnel in New York is precisely the type of generic and insignificant contact that does nothing to tip the constitutional scale in favor of New York law. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 151 F. Supp. 2d 526, 533 (D.N.J. 2001) (applying *Allstate* constitutional analysis, "the focus here is on [the defendant's contacts with New Jersey concerning the operative facts giving rise to this litigation, and not on its contacts with New Jersey in general.") For the same reason, the fact that Indian Harbor may conduct unrelated insurance activities in New York (*see* IH Resp. at 14) also does not constitutionally justify application of New York law to this case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 819-22 (1985).

Having denigrated the significance of Mr. Kane's signature with respect to the question of issuance both in its brief (*see* IH Resp. at 3-9) and in its corporate representative's deposition (Stern Decl. Ex. 1 (Dkt. No. 87-1) (McMahon Depo. Tr. at 20:24-25, 21:20-22:3)), Indian Harbor nevertheless attempts to rely on that signature as a contact with New York for constitutional purposes. Indian Harbor cannot have it both ways. If Mr. Kane's signature is

meaningful, then the Policy was issued in New York. If, as Indian Harbor and its corporate representative vehemently argue, it was meaningless, then it cannot be a contact sufficient to satisfy constitutional requirements.

Finally, Indian Harbor's claim that its alleged contacts with New York "are more numerous and at least as significant as those the Supreme Court found sufficient in *Allstate*" (IH Resp. at 14), is without merit. In *Allstate*, the decedent's widow (who was to receive the death benefits at issue) was a resident of Minnesota, and the decedent was a Minnesota employee, creating sufficient state interest. Here, the insured, insurer, broker, creation and administration of the Policy, risks insured, losses, and claims are all outside New York. Indian Harbor's alleged New York contacts do not create, as *Allstate* requires, any interest on New York's part in applying a no-prejudice rule that even its own Legislature has seen fit to reject.

Unable to point to any significant party or transaction-specific contacts, Indian Harbor's position comes down to the argument that "[t]he consent of both parties to New York law in this transaction satisfies Due Process and allays any theoretical sovereignty concerns under the Full Faith and Credit Clause." (IH Resp. at 13) This is not the law, and Indian Harbor cites no support for it. In *Lehman Brothers*, Judge Keenan expressly stated that inclusion of a New York choice of law provision does not alone satisfy the constitutional standard. *See* 179 F. Supp. 2d at 135 ("The power of courts to enforce [the choice of New York law clause pursuant to N.Y. Gen. Oblig. § 5-1401] remains restricted within constitutional bounds.") And, in *Cuccioli*, Judge Kaplan went through a constitutional analysis notwithstanding the presence of a choice of law provision. *See* 150 F. Supp. 2d at 574. Courts therefore must decline to enforce a contractual choice of law provision when the state whose law is designated lacks constitutionally significant contacts to the parties and the transaction at issue. *See, e.g., Sentinel Indus. Contracting Corp. v.*

*Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 959 (Miss. 1999) (application of Texas law pursuant to choice of law provision was unconstitutional because Texas law bore "no reasonable relationship to or significant contacts with the parties or the subject matter of the litigation").

Applying New York law to an entirely out-of-state matter, thereby depriving a California municipality of coverage for its pollution claims, would be unfair and unconstitutional.

### III. EVEN IF NEW YORK COMMON LAW IS TO BE APPLIED, THE NEW YORK COURT OF APPEALS IS LIKELY TO REJECT THE NO-PREJUDICE RULE IN FAVOR OF A NOTICE PREJUDICE RULE IN THIS CASE.

With passage of Insurance Law § 3420(a)(5), "the New York State Legislature abandoned its 'no prejudice' rule and enacted a new scheme." *Weeks Marine, Inc. v. Am. S.S. Owners Mut. Prot. Indem. Ass'n*, 2011 U.S. Dist. LEXIS 95358, at *9-10 (S.D.N.Y. Aug. 25, 2011). Notwithstanding this significant development, Indian Harbor asks this Court to dismiss outright any notion that the New York Court of Appeals will revisit the common law no-prejudice rule. Indian Harbor claims that the Court of Appeals "had its opportunity to effect a sea change in New York common law in light of section 3420(a)(5) . . . but declined to do so" (IH Resp. at 19), citing *Briggs Ave. LLC v. Ins. Corp. of Hannover*, 11 N.Y.3d 377, 381-82 (2008). This is incorrect.

Addressing a question certified to it by the Second Circuit, the Court of Appeals in *Briggs* held that an insurer was entitled to disclaim coverage when the insured, because of its own error in failing to update the service address it had listed with the Secretary of State, did not provide timely notice of a lawsuit. *See* 11 N.Y.3d at 380. *Briggs* concerned a policy issued prior to section 3420(a)(5)'s effective date, and did not address whether the common law no-prejudice rule should change; there is no evidence that the issue of the rule's continued viability was presented to or argued before the Court. Indeed, with respect to the passage of section 3420(a)(5) in 2008, the *Briggs* court did nothing more than observe that the legislation would

apply to policies issued after January 17, 2009 and had not yet become effective. *See id.* at 382. While Indian Harbor contends that the New York Court of Appeals has "[stood] by its timely notice rule despite what other jurisdictions were doing" (IH Resp. at 21), Indian Harbor cites no case in the four years since section 3420(a)(5) took effect in which the Court was presented with the question of the no-prejudice rule's continuing viability.

Indian Harbor also claims that the New York Court of Appeals "has given no indication it would adopt a wide-reaching notice prejudice rule" (IH Resp. at 21). The Court of Appeals has in fact over time narrowed the application of the no-prejudice rule. For example, in *In re Brandon (Nationwide Mutual Insurance Co.)*, 97 N.Y.2d 491, 498 (2002), the Court of Appeals abrogated the no-prejudice rule in the context of supplemental uninsured motorists coverage, requiring insurers relying upon the late notice defense to demonstrate prejudice. *See id.* The Court of Appeals did so, noting the national trend in favor of the notice-prejudice standard. *See id.* at 496 n.3. The Court left open the possibility that the law could change, stating, "[t]he issue of whether New York should continue to maintain the no-prejudice exception when insurers assert late notice of claim as a defense [was] not before [it]." *Id.*

*Hanson Production Co. v. Americas Insurance Co.*, 108 F.3d 627, 630 (5th Cir. 1997), in which the Fifth Circuit applied the notice-prejudice standard as a matter of Texas common law despite Texas's historical adherence to the no-prejudice rule, illustrates that state common law on no-prejudice is subject to change, particularly to facilitate consistency with new statutory or regulatory rules. The New York Court of Appeals is likely to follow suit.

IV. **THE CITY'S NOTIFICATION OF THE CENTEX CLAIM WAS TIMELY.**

Indian Harbor's argument that Centex's submission of a claim form to the City in March 2012 was a "Claim" under the Policy is insupportable. By its plain terms, the Policy's reporting provision is only triggered when a Claim under the Policy involves "Loss" or "Remediation

Expense," both of which require alleged damages caused by a "Pollution Condition." (*See* Stern Decl. (Dkt. No. 52-1) at pp. 7-9 & 14 of 83 (Policy Section II B, J, S & Section VII)) As set forth in Defendant and Defendant-Intervenor's original brief (Dkt. No. 82 at 18-19), and as the California Court of Appeal held, no such damages were alleged in the suit against Centex until October 2012. The City therefore had no obligation to report the Centex claim before then. Indian Harbor mischaracterizes defendants' argument. (*See* IH Resp. at 23-24) The City does not contend that its reporting obligation hinges upon the *merits* of any underlying pollution damage allegations, but merely that its duty to report depends upon the *existence* of such allegations.

The City's reporting of the Centex matter was reasonable, in any event. The City learned of the potential exposure on March 28, 2012, and reported it to Indian Harbor on May 24, 2012. (Dkt. No. 83 ¶¶ 44, 49) Indian Harbor's reliance upon *American Home Assurance Co. v. Republic Insurance Co.*, 984 F.2d 76, 78 (2d Cir. 1993), to suggest the City provided late notice is misplaced. In *American Home*, the Second Circuit recognized that developments in an underlying case can be "[p]articularly relevant" to the issue of whether notice of claim was late, and was swayed by the fact that the delay in noticing the claim precluded the insurer from participating in settlement negotiations. Here, the only development that occurred in the Centex matter during the less than two months in which Indian Harbor contends that notice was improperly delayed, was the denial of a claim on statute of limitations grounds. This case therefore presents a different set of circumstances than *American Home*, and the City's reporting of the Centex claim complied with the Policy

## CONCLUSION

Indian Harbor's motion for summary judgment should be denied.

Dated: September 3, 2013

Respectfully submitted,

ANDERSON KILL & OLICK; P.C.

/s/ *David P. Bender*

David P. Bender (*pro hac vice*)
  (dbender@andersonkill.com)
Caroline R. Hurtado (*pro hac vice*)
  (churtado@andersonkill.com)
Michael J. Stoner (*pro hac vice*)
  (mstoner@andersonkill.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000

*Attorneys for Defendant the City of San Diego*

WILLKIE FARR & GALLAGHER LLP

/s/ *Mitchell J. Auslander*

Mitchell J. Auslander
  (mauslander@willkie.com)
Kelly M. Hnatt
  (khnatt@willkie.com)
Christopher J. Miritello
  (cmiritello@willkie.com)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000

*Attorneys for Defendant-Intervenor California State Association of Counties Excess Insurance Authority*